**In re MARY FREESE FARMS, INC., Debtor.**

**Bankruptcy No. 87–00136C.**

United States Bankruptcy Court, N.D. Iowa.

May 8, 1987.

Richard F. Stageman and Mark D. Walz, Des Moines, Iowa, for movant.

Thomas G. McCuskey, Cedar Rapids, Iowa, for debtor.

Carol Dunbar, Trustee.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER GRANTING MOTION TO DISMISS

MICHAEL J. MELLOY, Bankruptcy Judge.

The matter before the court is the Motion of Prudential Insurance Company of America to dismiss the Chapter 12 bankruptcy filed by Mary Freese Farms, Inc. (MFF). This is a core proceeding under 28 U.S.C. § 157(b)(2). After considering the evidence presented at the hearing and the briefs submitted by both parties, this court now makes the following Findings of Fact, Conclusions of Law and Order according to F.R.B.P. 7052.

### FINDINGS OF FACT

1. MFF is an Iowa corporation organized under the Iowa Business Corporation Act. Its sole shareholders consist of Baxter and Mary Freese and their five children. At least 80 percent of the value of MFF's assets consists of assets related to the farming operation. Its aggregate debts do not exceed $1,500,000.00 and not less than 80 percent of its aggregate non-contingent liquidated debts on the date the case was filed arise out of the farming operation owned or operated by MFF. The stock of MFF is not publicly traded.

2. MFF owns two farms, both mortgaged to Prudential in exchange for a loan made in December of 1976. Each farm is leased to tenants on a year-to-year cash rent basis. The rent is collected by Baxter Freese semi-annually; the second payment is made after harvest. The amount of the rent is negotiated by Baxter Freese and the

tenants each year. This is the full extent of MFF's involvement with the leased farms. At the time of the hearing, MFF fully expected to lease the property to the same tenants who farmed it last year. The amount of the rent had not yet been set.

3. No member of the Baxter and Mary Freese family or any relative has farmed the land for several years. The family owns no livestock or farm equipment. There is no evidence that any family member intends to engage in any farming operation in the forseeable future.

4. On December 29, 1976, MFF executed a promissory note for $130,000.00 and a mortgage on two parcels of farmland to Prudential in exchange for a loan. Prudential initiated a foreclosure action on the mortgage on September 26, 1986, in the Iowa District Court in and for Washington County. On November 21, 1986, the court issued a Decree of Foreclosure. The sheriff's sale was set for January 21, 1987. MFF filed its Chapter 12 petition in bankruptcy on January 20, 1987.

## DISCUSSION

On October 27, 1986, the Bankruptcy Judges, United States Trustees and Family Farmers Bankruptcy Act of 1986, Pub.L. 99–554, 100 Stat. 3088 (Family Farmer Bankruptcy Act or Act) was signed into law by President Reagan. The Act took effect on November 26, 1986. Clearly contemplated by Congress, the Family Farmer Bankruptcy Act was "designed to give family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land. It offers family farmers the important protection from creditors that bankruptcy provides while, at the same time, preventing abuse of the system and ensuring that farm lenders receive a fair repayment." *Joint Explanatory Statement of the Committee of Conference,* 132 Cong.Rec. H8998 (daily ed. Oct. 2, 1986). Cognizant of this statement in particular, and the legislative history of the Family Farmer Bankruptcy Act as a whole, the court in this opinion addresses the issue of whether a cash rent corporate landlord is eligible for relief under Chapter 12 of the Bankruptcy Code.

The Bankruptcy Code, as amended by the Act, allows "[o]nly a family farmer with regular, annual income" to qualify as a Chapter 12 debtor. 11 U.S.C. § 109(f) (West 1987). The newly amended "Definitions" section defines this as a "family farmer whose annual income is sufficiently stable and regular to enable such family farmer to make payments under a plan under Chapter 12 of this Title." 11 U.S.C. § 101(18) (West 1987). The broad question, then, is whether MFF is a "family farmer" as defined by the Family Farmer Bankruptcy Act.

"Family farmer" is newly defined in 11 U.S.C. § 101(17) (West 1987) as including a

corporation or partnership in which more than 50 percent of the outstanding stock or equity is held by one family, or by one family and the relatives of the members of such family, and such family or such relatives conduct the farming operation, and

(i) more than 80 percent of the value of its assets consists of assets related to the farming operation;

(ii) its aggregate debts do not exceed $1,500,000 and not less than 80 percent of its aggregate noncontingent, liquidated debts (excluding a debt for one dwelling which is owned by such corporation or partnership and which a shareholder or partner maintains as a principal residence, unless such debt arises out of a farming operation), on the date the case is filed, arise out of the farming operation owned or operated by such corporation or such partnership; and

(iii) if such corporation issues stock, such stock is not publicly traded.

More narrowly focused, the issue presented under this statute is whether the Freese family members "conduct the farming operation."[1] "Farming operation" is defined in 11 U.S.C. § 101(20) (West 1987) to include "farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry or livestock, and production

---

1. The parties agree that the remaining requirements of § 101(17) are satisfied in this case.

of poultry or livestock products in an unmanufactured state." There is no dispute that the two parcels in question are rented to tenants who farm the land. MFF's sole contributions are the negotiation of leases to third parties and the collection of rents from the tenants. If the tenants are unable to pay their rent as it comes due, MFF does not get paid.

To date there have been no cases addressing the issue of whether a cash rent farmer, either a corporation or an individual, may qualify as a "family farmer" eligible for Chapter 12 relief. There is, however, germane case law on the definition of a farmer for purposes of involuntary Chapter 7 filings or conversions. An element common to all of these cases is the concept of "risk."

One of the questions in *Matter of Armstrong,* 812 F.2d 1024 (7th Cir.1987) concerned whether the income Armstrong received from acreage he rented to a third party should be included in his gross income for purposes of determining whether he was a "farmer" under the Bankruptcy Code. Under that definition (now found at 11 U.S.C. § 101(19) (West 1987)) a person who receives over 80 percent of his gross income from a farming operation owned or operated by that person cannot be subjected to an involuntary bankruptcy. In concluding that the rent constituted nonfarm income, the court stressed that since Armstrong received the rent money "in cash and up front," the lease arrangement was not a "risk laden venture in the nature of farming." *Armstrong,* 812 F.2d at 1027. Even though Armstrong actively participated in the tillage of the rented ground and provided fertilizer for the acreage, he was not required to do so by the terms of the lease. The relationship between the two parties was, therefore, more accurately described as a landlord-tenant relationship. *Id.* The court noted that its conclusion was not inconsistent with the broad interpretation afforded the Bankruptcy Code definition of "farming operation." 11 U.S.C. § 101(20) (West 1987). *Id.* at 1028. *See In re Blanton Smith Corp.,* 7 B.R. 410 (Bankr.M.D.Tenn.1980).

The situation in this case is almost identical to the arrangement in *Armstrong.* While MFF does not receive all of its rent "up front," it is paid in semi-annual installments. If bad weather or poor management reduce or eliminate the tenants' yield, the rent is nevertheless absolutely due and payable on the date set by the parties according to the lease agreement. This is not a cropshare lease situation, where, for example, a farmer-lessor works out an arrangement with a farmer-lessee to pay a certain percentage of the input expenses in exchange for the same percentage of the resultant crop. Under the cropshare agreement, each farmer receives the set percentage of the crop that is ultimately harvested. Although the farmer does not actually work the ground, he assumes the risk of a poor or nonexistent crop and accordingly, the risk that he will be paid substantially less than originally anticipated. The risk inherent in a farming operation is shared by the landlord and tenant according to the percentages set by the cropshare lease.

In contrast, in terms of risk a farm that is cash rented is basically no different from any other debtor-creditor or landlord-tenant relationship. If the tenant farmer fails to pay the rent when due, the landlord has a statutory lien on all of the crops grown on the rented ground. He may also have taken a consensual security interest. Even if there is a total crop failure, the tenant is personally liable to the landlord for the amount of the rent owed. The landlord of a residential apartment building has similar options should a tenant fail to fulfill his lease obligations. The landlord may proceed according to state law to evict the tenant and recover damages against the tenant personally.

A landlord under a cash lease similar to the leases of MFF is not the entity the Family Farmer Bankruptcy Act was designed to protect. If Chapter 12 is construed to provide relief to a cash rent landlord such as MFF, there seems to be nothing to prevent any corporation or partnership that owns farmland for investment purposes and rents it out to be farmed from qualifying as a "family farmer" for

purposes of Chapter 12 relief, as long as 80 percent of the corporate debt is farm related and its total debt is less than $1,500,000.00. This result would be achieved in spite of Senator Grassley's caveat to the Senate before the vote on the Conference Committee Report: "Though the purpose [of the subtitle] is to give family farmers a fighting chance to reorganize their debts, the provisions ensure that only family farmers—not tax shelters or large corporate entities—will benefit." 132 Cong.Rec. S15075 (daily ed. Oct. 3, 1986).

MFF cannot be said to "conduct" the farming operation at issue in this case. While this Court is not suggesting that the Act cries for a return to the "mud on the boots" approach taken by the Bankruptcy Act of 1898, as amended, *see Matter of Wagner*, 808 F.2d 542, 546 (7th Cir.1986), to qualify as a debtor under the Family Farmer Bankruptcy Act, a corporate landlord must clearly do more than merely negotiate and accept set cash rent payments from a tenant who makes all of the management decisions and does all of the "hands-on" planting and harvesting.

### CONCLUSIONS OF LAW

A cash rent corporate landlord of a farm, who contributes nothing more to the farm operation than negotiating the lease and collecting the rent is not a "family farmer" as defined by § 101(17) of the Family Farmer Bankruptcy Act.

### *ORDER*

IT IS THEREFORE ORDERED that the Motion to Dismiss made by Prudential Insurance Company of America is granted.