**In re TIM WARGO & SONS, INC., Debtor.**

**EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Plaintiff,**

v.

**TIM WARGO & SONS, INC., Defendant.**

**Bankruptcy No. PB 86–474M.**

**CMS No. 87–39M.**

United States Bankruptcy Court, E.D. Arkansas, Pine Bluff Division.

June 5, 1987.

Richard P. Alexander, Fayetteville, Ark., for debtor.

Billy J. Hubbell, Crossett, Ark., for Equitable Life.

A.L. Tenney, Little Rock, Ark., trustee.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

On December 22, 1986, Tim Wargo & Sons, Inc., (debtor) filed a petition for relief under the provisions of chapter 12 of the Bankruptcy Code. Equitable Life Assurance Society of the United States (Equitable Life) filed a motion to dismiss the chapter 12 case, or in the alternative, for relief from the automatic stay, claiming that the debtor was not eligible for relief under chapter 12 because, among other things, it was not a "family farmer" within the meaning of 11 U.S.C. § 101(17). The Court heard the matter March 3, 1987, and took the case under advisement.

This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). The Court has jurisdiction to enter a final judgment in the case.

### FACTS

The debtor is a closely held corporation whose stock is owned by the Wargo family. The debtor's principal asset is approximately 440 acres of cultivable farmland. The Wargo family personally farmed the debtor's land for many years until 1985, at which time the land was leased to a tenant farmer. Generally, the lease provided that in return for the use of the debtor's farmland, the tenant farmer would transfer one-fourth of his harvested crop to the debtor. The debtor was responsible for one-fourth of the pesticide and fertilizer costs, and for the costs of maintaining an irrigation well. In addition to the rent income, the debtor received government farm subsidy payments in the year preceding the filing of the petition. The tenant was farming all of

the debtor's land pursuant to the lease arrangement when the debtor filed this petition.

The debtor originally sought protection from creditors by filing a chapter 11 petition on March 12, 1985. On April 7, 1986, the case was dismissed on the Court's own motion because the debtor had failed to file operating reports and had failed to attempt to obtain a confirmed plan during the thirteen months the case was pending. After the debtor's chapter 11 case was dismissed, Equitable Life commenced foreclosure proceedings against the debtor's farmland. By December 22, 1986, a decree of foreclosure had been entered and a commissioner had been appointed to sell the real property at a foreclosure sale. A sale of the property had occurred, although the commissioner's deed had not been delivered and the order of confirmation had not been entered. On that date, the debtor filed the present petition under chapter 12. Since the pending sale of the farmland had not been completed as of the petition date,[1] the real property became property of the bankruptcy estate and was subject to the automatic stay provisions of 11 U.S.C. § 362.

## DISCUSSION

On October 27, 1986, the President signed into law an amendment to the Bankruptcy Code styled the Bankruptcy Judges, United States Trustees and Family Farmer Bankruptcy Act of 1986 (the Amendment). The Amendment created chapter 12 to the Code which was designed to assist certain farmers who are forced to file bankruptcy. The overall purpose of chapter 12 was stated in part in the Joint Explanatory Statement of the Committee of Conference as follows:

Under current law, family farmers in need of financial rehabilitation may proceed under either Chapter 11 or Chapter 13 of the Bankruptcy Code. Most family farmers have too much debt to qualify as debtors under Chapter 13 and are thus limited to relief under Chapter 11. Unfortunately, many family farmers have found Chapter 11 needlessly complicated, unduly time-consuming, inordinately expensive and, in too many cases, unworkable.

Accordingly, this subtitle creates a new chapter of the Code—Chapter 12— to be used only by family farmers. It is designed to give family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land. It offers family farmers the important protection from creditors that bankruptcy provides while, at the same time, preventing abuse of the system and ensuring that farm lenders receive a fair repayment.

H.R. Conf.Rep. No. 958, 99th Cong., 2nd Sess. 45, 48, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5227, 5246, 5249.

Congress did not intend for chapter 12 to be available to all debtors who are engaged in agricultural related businesses. The eligibility requirements limit chapter 12 relief to "a family farmer with regular annual income." 11 U.S.C. § 109(f). For purposes of a corporate debtor, a family farmer is defined as follows:

(B) corporation or partnership in which more than 50 percent of the outstanding stock or equity is held by one family, or by one family and the relatives of the members of such family, *and such family or such relatives conduct the farming operation,* and

(i) more than 80 percent of the value of its assets consists of assets related to the farming operation;

(ii) its aggregate debts do not exceed $1,500,000 and not less than 80 percent of its aggregate noncontingent, liquidated debts ... arise out of the farming operation owned or operated by such corporation or such partnership; and

(iii) if such corporation issues stock, such stock is not publicly traded.

11 U.S.C. § 101(17)(B) (emphasis added). Because the debtor meets all of the requirements of clauses (i)—(iii), the issue before the Court is whether the Wargo

---

**1.** Under Arkansas law, a judicial sale is not complete until an order of confirmation is entered by the court. *Fleming v. Southland Life Ins. Co.,* 263 Ark. 272, 564 S.W.2d 216 (1978).

family "conduct[s] the farming operation" by virtue of the debtor leasing its farmland to a tenant farmer.

■ 11 U.S.C. § 101(20) defines farming operation as "includ[ing] farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state." The definition has existed since the Code was originally adopted, and the Amendment did not alter that definition. The statutory definition is a nonexclusive list and does not necessarily preclude leasing of farmland from being considered a "farming operation." *See 2 Collier on Bankruptcy* ¶ 101.20 (15th ed. 1987). Since the term "farming operation" is incorporated into the definition of "family farmer" under chapter 12, the Court must interpret "farming operation" in the context of Congress' intent to provide relief for a limited group of farmers.[2]

■ The Amendment to the Bankruptcy Code providing for chapter 12 was designed to stop the flight of farmers from the farm due to critical economic difficulties and to help family farmers continue farming. Senator Charles Grassley stated, before the final Senate vote on the chapter 12 legislation, that "I measure [the farm crisis] in terms of human tragedy, the disruption of lives, and the dispair of being a middle-aged farmer suddenly told to find another livelihood to support a family." 132 Cong.Rec.S. 15075 (daily ed. Oct. 3, 1986) (remarks by Sen. Grassley); Representative Mike Synar stated that chapter 12 would give new hope to "family farmers who are facing that brink of disaster where they would have to be thrown off their farms." 132 Cong.Rec.H. 9001 (daily ed. October 2, 1986) (remarks by Rep. Synar). There is nothing in the legislative history to indicate that Congress intended chapter 12 to act as a vehicle for reviving abandoned operations. In the present case, the debtor's shareholders personally conducted a farming operation in the traditional sense in previous years, but this operation ceased in 1985. In construing the term "farming operation," the Court must examine the debtor's activities as of the petition date. *See In re Tart,* 73 B.R. 78 (Bkrtcy.E.D.N.C. 1987).

■ The phrase "and such family ... conduct[s] the farming operation," as provided in the definition of a corporate family farmer, suggests that in order to be eligible for relief under chapter 12, a corporate debtor, through its related shareholders must be involved in the farming activity in a more meaningful way than passively receiving rent payments from a third party who actually farms the land. This view is not inconsistent with the statement of Senator McConnell, who proposed that the phrase be added to the definition of family farmer:

> My intent [in proposing a change to the definition of family farmer] is to see that only family farmers can take advantage of [chapter 12]. One of the biggest criticisms that I hear from Kentucky farmers is that nonfarmers who are only in farming to offset income from some other source are distorting agriculture. My proposal would provide a definition of

---

2. Several courts have construed the terms "farming operation" and "farming income" in the context of involuntary petitions filed against those seeking the favorable treatment given farming entities by the Code. *See In re Dakota Lay'd Eggs,* 57 B.R. 648 (Bkrtcy.N.D.1986) (income from eggs obtained through contracts with independent farmer/producers who owned hens was not income derived from a farming operation) (the court stated that in determining whether income is derived from a farm operation, consideration must be given to the character of the business and whether its income is derived from its own farming or production efforts as opposed to the farming and production efforts of others); *In re Blanton Smith Corp.,* 7 B.R. 410 (Bkrtcy.M.D.Tenn.1980) (income derived from processing, packaging and marketing of eggs from hens owned by debtor and managed by independent farmer contractors was income from farming operation); *In re Wagner,* 53 B.R. 93 (Bkrtcy.W.D. Wis.1985), *aff'd,* 808 F.2d 542 (7th Cir.1986) (income from distribution of IRA account was not income from a farming operation even though contributions to the IRA were income from farming operation); *In re Armstrong,* 812 F.2d 1024 (7th Cir.1987) (income from cash rent paid in advance was not income from farming operation, but income from sale of farming equipment was income derived from farming operation).

what constitutes a family farm that I believe is consistent with the overall intent of this legislation.

. . . .

The language that I propose to add to Senator Grassley's bill would establish more reasonable guidelines to insure that the use of chapter 12 bankruptcy is restricted for family farms and corporations, not for corporations involved in farming just for the tax shelter that farming has provided in the past. . . . In addition, a corporation who seeks to file under chapter 12 must have 50% of the stock or equity owned by a *person who is actually farming*.

132 Cong.Rec.S. 5613 (daily ed. May 8, 1986) (remarks of Senator McConnell) (emphasis added).

Implicit in Senator McConnell's statement is that chapter 12 should not be available to those who only have a collateral interest in an actual farming operation or whose principal source of income is from a nonfarming activity. In the present case, the debtor as landlord has relinquished control over the manner in which the tenant operates the farm as well as possession of its own farmland[3] and does not have an active role in a farming operation in the traditional sense. The argument that the Wargo family, by leasing farmland through a corporate debtor, "conducts a farming operation" within the scope of chapter 12 must fail. The evidence was that only one of the debtor's shareholders, Tim Wargo, Jr., performed any duties related to the lease of the land, and the amount of time involved was not substantial. Tim Wargo, Jr., owned less than 14% of the outstanding stock of the debtor and apparently held a job that was unrelated to farming. The remaining shareholders either derived their principal source of income from an outside source or were free to do so. The Court cannot construe this arrangement to be within the meaning of the phrase "and such family conduct[s] . . . the farming operation" as intended by its drafters.

This Court is unaware of any reported decisions on the exact issue presented, but the Seventh Circuit Court of Appeals in *In re Armstrong*[4] dealt with a similar issue. Armstrong was a farmer who leased a portion of his land to a tenant for cash in advance. In holding that the lease payments were not income from a farming operation, the court noted that the lease payments, because they were received in advance, were not subject to the inherent risks of a typical farmer, and that the income was not an integral part of Armstrong's own farming operation. *In re Armstrong*, 812 F.2d at 1027. This Court believes that the most relevant portion of that decision in relation to the case at bar is the court's reasoning that for the rental payments to have been considered income from a farming operation, they must have been integral to the debtor's *own* farming operation. Implicit in the majority's opinion is that the receipt of rental income alone from farmland cannot constitute a "farming operation." Judge Cudahy, concurring in this same analysis, stated that "I certainly agree with the general proposition that mere ownership of farm land, standing alone, does not establish the landowner as the owner of a 'farming operation.'" *In re Armstrong*, 812 F.2d at 1030.

■ This Court recognizes the emphasis the court in *Armstrong* placed on the fact that the debtor was not subject to the inherent risks faced by farmers,[5] and the court's implication that if the debtor's income had been subject to those same risks, as with a crop share arrangement, then the income might have been considered income from a "farming operation." However, the

---

3. In Arkansas, unless otherwise agreed, the tenant has the exclusive right to remain in possession of the leased farmland for the term of the lease. E. Solberg, *The Legal Aspects of Farm Tenancy in Arkansas*, 36 (1947).

4. 812 F.2d 1024 (7th Cir.1987).

5. A recent bankruptcy case was decided under the same analysis. *See In re Mary Freese Farms, Inc.*, 73 B.R. 508, (Bkrtcy.N.D.Iowa 1987) (corporate debtor whose sole source of revenue was cash rent from farmland not allowed chapter 12 protection).

fact that an entity derives its income from an activity that is subject to the same risks faced by farmers does not necessarily determine that such activity constitutes a "farming operation."[6] Many nonfarm businesses face the risks of inclement weather and unstable markets for their products. Other businesses, particularly farm implement dealers and suppliers and agricultural lenders have the same risk of nonpayment as the lessors of farmland. Obviously, it would unreasonably expand the definition of a farming operation to afford chapter 12 protection to entities engaged in these types of nonfarming activities. While the debtor's expectation for payment is subject to the same inherent risks faced by the tenant, this alone cannot transform a passive activity, which consists of receiving rent, into a "farming operation" conducted by the debtor's shareholders. Granting chapter 12 protection to this debtor would open the door for nonfarmer lessors whose principal interests in agriculture are land speculation and sheltering of nonfarm income, a group Congress certainly did not intend to benefit by enacting chapter 12.

## CONCLUSION

The debtor is not eligible for relief under chapter 12 because its shareholders do not "conduct a farming operation" within a reasonable interpretation of the term as it is used in the definition of a corporate family farmer.

The motion to dismiss is granted and the case is dismissed.

IT IS SO ORDERED.

---

**6.** The Court notes that the debtor's principal source of income is in the nature of rent and is only indirectly derived from the growing of crops, because in Arkansas, in share arrangements in which the tenant agrees to pay the landlord a portion of the crops grown, the tenant farmer has complete title to the crops and the landlord has a statutory lien against the crops for rent and advances, unless there is an agreement to the contrary. E. Solberg, *The Legal Aspects of Farm Tenancy in Arkansas*, 36 (1947).