**TIM WARGO & SONS, INC.,**
Debtor–Appellant,

v.

**The EQUITABLE LIFE ASSURANCE SOCIETY of the UNITED STATES, Appellee.**

**No. PB–C–87–378.**

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

May 16, 1988.

David J. Manley, Richard P. Alexander, Fayetteville, Ark., for debtor-appellant.

A.L. Tenney, North Little Rock, Ark., Trustee.

Billy J. Hubbell, Crossett, Ark., for appellee.

ORDER

REASONER, District Judge.

Debtor's petition for relief under Chapter 12 of the bankruptcy code was dismissed by the United States Bankruptcy Court,[1] the Court finding that debtor family corporation did not conduct a farming operation as the same is defined by 11 U.S.C. § 101(17)(B). That decision is reported as *In re Wargo and Sons, Inc.*, 74 B.R. 469 (Bankr.E.D.Ark,1987). Debtor appeals to District Court pursuant to Bankruptcy Rule 8001(a).

The principal asset of debtor's estate is approximately 440 acres of cultivatible farmland. Unlike *In re Armstrong*, 812 F.2d 1024 (7th Cir.1987) and *In re Mary Freese Farms, Inc.*, 73 B.R. 508 (Bankr.N.D.Iowa 1987), where the debtors leased farmland for a cash rent paid in advance, debtor here rented its land to a tenant on a crop-share lease. Debtor paid 25% of the fertilizer and other costs and the tenant paid debtor 25% of the proceeds of the crops after harvested and sold. Debtor on appeal argues that, since the amount of rent received depends upon the success of its tenant's farming operation, debtor bears

---

1. The Honorable James G. Mixon, U.S. Bankruptcy Judge for the Eastern District of Arkansas.

risks associated with farming that were not born by the debtors in *Armstrong* and *Mary Freese Farms*. The Court agrees with debtor that it does bear a farming related risk that is greater than that borne by one receiving a cash rent paid in advance. However, the Court cannot agree with debtor that bearing such a risk satisfies the definition of a corporate "family farmer", which must to satisfy requirements of the statute, "... conduct [a] farming operation ..." 11 U.S.C. § 101(17)(B). Thus, the decision of the bankruptcy judge will be affirmed.

In its thoughtful and well reasoned opinion, which this Court adopts, the Bankruptcy Court details the legislative history of the act entitled Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99–554, 100 Stat. 3088 (1986), which created Chapter 12 to the Bankruptcy Code. This Court agrees with the bankruptcy judge that both the statutatory language and the legislative history of the Act make it clear that Congress did not intend to provide Chapter 12 relief to every person or entity involved with agriculture or who might bear some risk associated with the success or failure of a farming operation. As the Bankruptcy Court correctly observed in its opinion:

> However, the fact that an entity derives its income from an activity that is subject to the same risks faced by farmers does not necessarily determine that such activity constitutes a "farming operation". Many non-farm businesses face the risks of inclement weather and unstable markets for their products. Other businesses, particularly farm implement dealers and suppliers and agricultural lenders, have the same risk of non-payment as the lessors of farmland. Obviously, it would unreasonably expand the definition of a farming operation to afford Chapter 12 protection to entities engaged in these types of non-farming activities.

74 B.R. at 473–74.

This Court is aware of and has considered the authority of *In re Tobin Ranch, Inc.*, 80 B.R. 166 (Bankr.D.Neb. 1987), which reached a contrary conclusion.

The discussion of the issue in *Tobin* was limited to one paragraph and this Court is of the opinion that it is simply not persuasive when compared with the thorough and careful study of the issue by the bankruptcy judge here. Hence, this Court chooses not to follow the authority of *Tobin Ranch*.

Debtor further argues that it did more in connection with its tenant's farming than merely passively receive rent. Tim Wargo, Jr., a 13⅓% stockholder in debtor, testified that he conferred with the tenant in making decisions as to "... what to plant and where to plant it, and ... when to fertilize the crop...." However, this Court agrees with the bankruptcy judge that these activites hardly amount to the conducting of a "farming operation". Indeed, an absentee landlord could engage in the same activity over the telephone.

Finally, debtor argues that its activities and interests would allow it to be treated as a "farmer" under the Internal Revenue Code and be eligible to participate in programs administered by the Agricultural Stabilization and Conservation Service pursuant to the definition of "person" outlined in 7 C.F.R. § 1713.3 (1987). However, the purposes of the Internal Revenue Code and services performed by the ASCS are so different from those which are the basis for Chapter 12 of the Bankruptcy Code that such an analogy as debtor attempts to draw is entirely inappropriate and cannot be accepted.

Appellee, in opposing the appeal, states that the petition also should have been dismissed because debtor did not act in good faith. Specifically, appellee complains that debtor, while not making a payment to it since March of 1984, had over $18,761 in 1985 available for debt service and allowed Tim Wargo, Jr. to withdraw $10,500 as a loan, that Tim Wargo, Jr., acting on behalf of debtor, made a bid at a commissioner's sale of debtor's farmlands which he knew he could not, and in fact did not, pay and that the bankruptcy petition was not filed by debtor until after a second commissioner's sale was held and was about to be confirmed. While appellee no

doubt has a firm conviction that debtor has more abused, than properly used, the provisions of Chapter 12, the record on this point is not sufficiently developed to allow this Court to declare on appeal that debtor acted in bad faith.

It is, therefore, ORDERED that the decision of the Bankruptcy Court is affirmed and this appeal is dismissed.