In re TIM WARGO & SONS, INC., Debtor.

TIM WARGO & SONS, INC., Appellant,

v.

EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellee.

No. 88–1949.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1988.

Decided March 14, 1989.

Steve Alexander, Fayetteville, Ark., for appellant.

Billy J. Hubbell, Crossett, Ark., for appellee.

Before BOWMAN and MAGILL, Circuit Judges, and HANSON, Senior District Judge.*

BOWMAN, Circuit Judge.

Tim Wargo & Sons, Inc. (debtor) appeals from a final order of the District Court[1] affirming the Bankruptcy Court's[2] dismissal of its Chapter 12 case.[3] The courts below ruled that debtor is not eligible for Chapter 12 relief because it is not a "family farmer" as defined by the Bankruptcy Code (Code). We affirm.

Debtor is a closely held corporation whose principal asset is approximately 450 acres of farmland located in Desha County, Arkansas. Tim Wargo, Sr. owns sixty percent of debtor's stock, the remainder split among his wife Callie and two sons Tim, Jr. and Andrew.[4] The Wargo family farmed this acreage prior to 1985; beginning with crop year 1985, however, debtor leased the entire acreage to a tenant farmer. Under the lease, the tenant farmer planted, cultivated, and harvested crops on debtor's land, remitting to debtor twenty-five percent of the proceeds from the sale of the crops less twenty-five percent of the cost of fertilizer. The tenant farmer worked debtor's acreage in this fashion in 1985 and 1986. Debtor sought protection under Chapter 12 in 1986 after the Equitable Life Assurance Society of the United States filed a foreclosure action against debtor and others in Arkansas state court.

Access to the relief afforded by Chapter 12 of the Code, 11 U.S.C. §§ 1201–1231 (Supp. IV 1986), is restricted to "family farmer[s] with regular annual income." 11 U.S.C. § 109(f) (Supp. IV 1986). A corporation is a "family farmer" if the corporation has certain characteristics; among other things, "more than 50 percent of the outstanding stock or equity [must be] held by one family ... and such family [must] conduct the farming operation." 11 U.S.C. § 101(17)(B) (Supp. IV 1986). The central issue in this appeal is whether debtor, through the Wargo family, "conducted" the planting, cultivating, and harvesting of crops which occurred on debtor's farmland in 1985 and 1986.

---

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Honorable Stephen M. Reasoner, United States District Judge for the Eastern District of Arkansas.

2. The Honorable James G. Mixon, United States Bankruptcy Judge for the Eastern and Western Districts of Arkansas.

3. *Tim Wargo & Sons, Inc. v. Equitable Life Assurance Soc'y of the United States (In re Tim Wargo & Sons, Inc.),* 74 B.R. 469 (Bankr.E.D. Ark.1987), *aff'd,* 86 B.R. 150 (E.D.Ark.1988).

4. Debtor's stockholders are hereafter referred to collectively as "the Wargo family."

This inquiry is essentially one of fact. Debtor urges upon us the proposition—one we take to be of law—that its lease of land to a tenant farmer in the fashion described above may be characterized as a "farming operation" as that term is defined by the Code, 11 U.S.C. § 101(20) (Supp. IV 1986). We assume without deciding that debtor's arrangement with its tenant farmer may be so characterized.[5] Nevertheless, we hold that the Wargo family did not "conduct" the farming operation on debtor's land.

The Bankruptcy Court found that "only one of the debtor's shareholders, Tim Wargo, Jr., performed any duties related to the lease of the land, and the amount of time involved was not substantial." *In re Tim Wargo & Sons, Inc.*, 74 B.R. at 473. This finding of fact is not clearly erroneous. Tim Wargo, Jr. testified that he holds three jobs, none of which involves farming debtor's acreage. Transcript of March 3, 1987 Hearing at 21. Tim Wargo, Jr. testified in passing that he has had occasion to drive a tractor on debtor's acreage since debtor began leasing its farmland to the tenant, *id.* at 61, but the record is silent as to the frequency and duration of his efforts. There is no testimony by any of the other members of the Wargo family. Debtor points to, and we can find, nothing in the record to detract from the Bankruptcy Court's finding that debtor has basically turned all responsibility for crop production over to the tenant farmer and retains no significant involvement in or control over the farming of its acreage.

At oral argument counsel for debtor asserted that the Bankruptcy Court's finding is speculative. To this claim we need only observe that the Bankruptcy Court drew an entirely fair inference from the record presented it, and that, were there more to Tim Wargo, Jr.'s role in the conduct of the farming of debtor's acreage than that re-flected in the record, the burden was debtor's to elicit the relevant facts. *See In re Rott*, 73 B.R. 366, 371 (Bankr.D.N.D.1987) (party filing Chapter 12 petition bears burden of proving eligibility); *see also Jenkins v. Petitioning Creditor—Ray E. Friedman & Co.*, 664 F.2d 184, 186 (8th Cir.1981) (party filing involuntary petition bears burden of proving entitlement to such relief).

Debtor places much emphasis on discussions Tim Wargo, Jr. had with the tenant farmer about what crops to plant in a given year. Debtor also emphasizes discussions Tim Wargo, Jr. had with Tim Wargo, Sr. about the farming of debtor's acreage. At oral argument debtor urged us to consider these conversations illustrative of debtor's "conducting" the farming of its acreage. The courts below rejected this suggestion, and so do we. In order for debtor to be characterized as "conducting" the farming of its acreage within the meaning of § 101(17)(B), some member of the Wargo family must at minimum play an active role in the farming operation taking place on its land. *See In re Burke*, 81 B.R. 971, 976 (Bankr.S.D.Iowa 1987) (corporate debtor which leases farmland to tenant under crop share arrangement considered "engaged in farming" only if family members of debtor "take an active role in the operation"); *In re Mikkelsen Farms, Inc.*, 74 B.R. 280, 285 (Bankr.D.Or.1987) (though corporate debtor leased all of its farmland in crop year 1987, debtor eligible for Chapter 12 relief because it, through its principals, had planted and harvested crops in 1986, the year in which it filed its petition). *Cf. In re Dakota Lay'd Eggs*, 57 B.R. 648, 656 (Bankr.D.N.D.1986) (corporation receives income from a farming operation if income is "derived from its own farming or production efforts as opposed to the farming or production efforts of others").[6] As the

---

5. Thus, we have no occasion to consider the applicability of *In re Armstrong*, 812 F.2d 1024, 1027–28 (7th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 287, 98 L.Ed.2d 248 (1987) (rental income from farm lease that does not expose debtor-lessor to risk of non-payment due to natural calamity to crops is not income from a "farming operation"), to this case.

6. *In re Tobin Ranch, Inc.,* 80 B.R. 166 (Bankr.D. Neb.1987)—a case cited by debtor and referred to by the District Court—is not to the contrary. The bankruptcy court there determined that "the crop share rental arrangement between Tobin Ranch, Inc., and its tenants satisfies the 'farming operation' requirement" of § 101(17)(B). *Id.* at 167. As noted above, we grant debtor as much without deciding the

District Court observed, the conversations just described do not distinguish the role played by the Wargo family in the production of crops on debtor's acreage from that of an absentee landlord doing business in the corporate form who simply owns land and leases it to a tenant farmer from year to year. *In re Tim Wargo & Sons, Inc.*, 86 B.R. at 151. The "conduct" element of § 101(17)(B) serves to exclude from Chapter 12 eligibility those corporations which bear so attenuated a connection with the farming operation itself. *See In re Mary Freese Farms, Inc.*, 73 B.R. 508, 511 (Bankr.N.D.Iowa 1987) (where tenant farmer "makes all of the management decisions and does all of the 'hands-on' planting and harvesting," corporate debtor does not "conduct" the farming operation); 132 Cong.Rec. 9985 (1986) (statement of Sen. McConnell) ("[A] corporation who [sic] seeks to file under chapter 12 must have 50 percent of its stock or equity owned by a person who is actually farming."). We conclude that the courts below were correct in attaching little significance to the conversations that debtor here emphasizes.[7]

In its brief debtor argues that if its arrangement with the tenant farmer is construed to be a "farming operation" as defined by the Code then "deductively, the [Wargo] family *must be* conducting the farming operation" because "all of [debtor's] business is conducted by its stockholders who are the members of a single family." Appellant's Brief at 6 (emphasis in original); *see also id.* at 21. As should be apparent from our discussion above, we find debtor's syllogistic gloss on the "conduct" element of § 101(17)(B) entirely too facile. Debtor's argument conflates its conduct of its corporate business with the

statutory requirement that the farming operation be conducted by the family. It may well be that the members of the Wargo family perform duties related to the functioning of debtor *qua* corporate entity, and in this sense conduct debtor's business.[8] As we have explained in this opinion, however, a family corporation that owns farmland on which crops are being produced does not qualify for protection under Chapter 12 unless some member of the family plays an active role in farming the land. That the Wargo family may conduct corporate business does not, contrary to debtor's suggestion, require a finding that the Wargo family conducts a farming operation as required by Chapter 12.

The final order of the District Court is affirmed.

---

issue. The *Tobin Ranch* court, however, did not have occasion to consider the issue before us in this case, namely, whether debtor satisfies the "conduct" requirement of that same Code provision.

7. In its brief debtor claims that it would be treated as a farmer under various provisions of the Internal Revenue Code and under certain regulations promulgated by the Department of Agriculture. Assuming that debtor is correct in that regard, its argument is beside the point. That an entity may be considered a "farmer" for

tax purposes or for participation in agricultural assistance programs does not mean it is a "farmer" for bankruptcy purposes; each area of the law provides its own particular definition. Further, the Bankruptcy Code specifically differentiates "farmer" from "family farmer." 11 U.S.C. § 101(19) (Supp. IV 1986).

8. Each member of the Wargo family is a director, and each save Andrew is an officer, of debtor. Designated Record at 12.