In re Otto R. VOELKER and Anita C. Voelker, Debtors.

Bankruptcy No. 90–09753.

United States Bankruptcy Court, E.D. Michigan, N.D.

Dec. 10, 1990.

---

H. Dale Cubitt, Bad Axe, Mich., for debtors.

Thomas W. McDonald, Jr., chapter 12 trustee, Saginaw, Mich.

Daniel S. Opperman, Bay City, Mich., for Cozette McCormick and Onalee Kervin.

## MEMORANDUM OPINION RE: DEBTORS' ELIGIBILITY FOR CHAPTER 12 RELIEF

ARTHUR J. SPECTOR, Bankruptcy Judge.

Onalee Kervin and Cozette McCormick (the "Creditors"), creditors of Otto R. Voelker and Anita C. Voelker (the "Debtors"), filed a Motion to Dismiss the Debtors' Chapter 12 case pursuant to § 1208(c) on the ground that the Debtors are not family farmers and are therefore ineligible for Chapter 12 relief. After a hearing, the Court issues these findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

The Debtors previously filed for relief under Chapter 12 on June 16, 1989. That case was dismissed on April 4, 1990 on motion of the Creditors because the Debtors were ineligible for Chapter 12 relief. After the Debtors' motion for a new trial was denied and their appeal from the dismissal was itself dismissed, the Debtors filed this case on August 31, 1990. The Creditors then brought the current motion.

█ When a debtor's eligibility to file under a particular chapter of the Bankruptcy Code is challenged, the burden is upon the debtor to establish such eligibility. *In re Tim Wargo & Sons, Inc.*, 869 F.2d 1128, 1130 (8th Cir.1989); *In re Cloverleaf Farmer's Co-op*, 114 B.R. 1010, 1013 (Bankr.D.S.D.1990); *In re Vernon*, 101 B.R. 87, 89 (Bankr.E.D.Mo.1989); *In re Snider*, 99 B.R. 374, 377 (Bankr.S.D.Ohio, 1989); *In re Rott*, 73 B.R. 366, 371, 15 B.C.D. 1292, 17 C.B.C.2d 381 (Bankr.D.N.D.1987); *In re Mozer*, 1 B.R. 350, 5 B.C.D. 1029, 1 C.B.C.2d 166 (Bankr.D.Colo.1979). Citing *In re Fuhrman*, 118 B.R. 72 (Bankr.E.D.Mich.1990), the Creditors argue that the Debtors must meet a particularly heavy burden in this case of showing that circumstances have significantly changed since the previous dismissal.

Although both *Fuhrman* and the case at bench involve a Chapter 12 filing on the heels of a prior dismissal, the legal issue decided in the prior litigation in each of these cases was materially different. In *Fuhrman*, we determined in May, 1990, that the Fuhrmans had unreasonably delayed or grossly mismanaged their case to the prejudice of creditors, that the estate had experienced a continuing loss or diminution and that the Fuhrmans lacked a reasonable likelihood of rehabilitating. One month later, the Fuhrmans filed a new Chapter 12 case. Because our earlier findings were conclusively presumed to be correct when made, and because the time that elapsed between the dismissal of the old case and the filing of the new petition was so short, we held that the Fuhrmans bore a heavy burden of showing materially changed circumstances.

█ Here, on the other hand, the issue in the prior motion for dismissal was whether, in 1988, the Voelkers "owned or operated" a farming operation for purposes of 11 U.S.C. § 101(17). We found that the Voelkers neither owned nor operated a farm *in 1988*. The focus of our inquiry was the calendar year 1988 because the earlier petition had been filed in 1989 and § 101(17)(A) directs us to "the taxable year preceding the taxable year in which the case ... was filed." Because the present case was filed in 1990, our task now is to

determine whether the Voelkers "owned or operated" a farming operation *in 1989*. It is certainly conceivable that a person could fail the technical family farmer test in one year but pass it in the next. The rationale for the "heavy burden" imposed on the debtors in *Fuhrman* is therefore absent in this case, and we accordingly conclude that the traditional preponderance-of-the-evidence standard applies here. For the reasons which follow, we find that the Debtors have met this burden.

█ The evidence was compelling that, in 1989, Otto Voelker regularly worked a 40–hour week on a farm owned by Otto Voelker Farms, Inc. Although the company bears his name, Otto Voelker does not "own" the farming operation, as his wife and he own only four of the 500 outstanding shares of the corporation stock. The question is whether he "operated" it for purposes of § 101(19).

The Bankruptcy Code provides no definition of that term. The legislative history discloses, though, that the definition of "farmer" in § 101(19) is derived from the Small Business Act. H.R.Rep. No. 595, 95th Cong. 1st Sess. 311 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6268. The Small Business Act, 15 U.S.C. § 631 *et seq.*, defines a "small-business concern" as "one which is independently owned and operated." 15 U.S.C. § 632(a). For purposes of determining whether a business is "women-owned," the term "operate" is defined as "being actively involved in the day-to-day management" of the business. Exec. Order No. 12138, 44 F.R. 29637 (1979). The Family Farmer Reorganization Act of 1986, which created Chapter 12, used the same terminology when defining "family farmer" as is found in § 101(19)'s definition of "farmer": "a farming operation owned or operated by such . . . ." It is logical to assume that, had Congress intended a different meaning for the term "operated" from that which President Carter utilized in a part of the Small Business

Act, it would have provided one. In any event, the Executive Order's definition is a pretty good working definition of the term "operate," and the context there is not so different from the context here.

Under this definition, it is clear that Mr. Voelker "operated" the farm in 1989. The testimony was uncontradicted that Mr. Voelker and his son, Ross, jointly managed all phases of the farm operation. Management decisions relating to the certified seed department, cattle feeding and marketing were Otto's primary area of expertise. Although all important decisions were made jointly, Ross deferred to his father in his father's fields of expertise. In addition, Otto actually performed his fair share of the physical labor in implementing those decisions. Among other things, Mr. Voelker mixed the feed, loaded and unloaded cattle, repaired equipment, ministered to sick cattle, hauled manure, pushed up silage and crimped corn.

The fact that the Debtors operated a family farm in 1989 does not suffice to qualify them to file a Chapter 12 petition in 1990; they must also show that they received "from such farming operation more than 50 percent" of their 1989 "gross income." Section 101(17).[1] The evidence established the following sources of the Debtors' gross income in 1989:

$14,566.00 from Social Security
$ 399.00 from dividends
$ 490.00 from Zoning Commission fees
$ 24.00 from patronage dividends
$12,654.00 from property tax refunds
$ 2,000.00 from reimbursement of farming expenses
$ 600.00 from rental of a farm house
$30,600.00 from rental of farmland

$61,333.00 TOTAL[2]

The critical question here is whether the $31,200 in rentals, which comprise over 50% of the Debtors' 1989 gross income, constitute farm income.

---

1. The other tests—percentage of debts, aggregate debts—are no longer in issue.

2. Although the Debtors are each over 70 years old and should be withdrawing from their IRA and Keogh accounts, pre-petition garnishments by the Creditors prevented them from receiving any such income in 1989.

752

The question of whether cash rent of farmland may be considered income "from such farming operation" has been extensively litigated. A set of factors relevant to this inquiry was developed by the court in *In re Paul*, 83 B.R. 709 (Bankr.D.N.D. 1988), and was summarized by this court as follows:

> (1) whether the debtor's operation is a continuing one; (2) whether there is a physical presence of family members on the farm; (3) whether the debtor owns traditional farm assets; (4) whether leasing out land is a form of scaling down previous farm operations; (5) the form of the lease; (6) whether the debtor ceased all of its own investment of labor and assets to produce crops or livestock.

*In re Coulston*, 98 B.R. 280, 282 (Bankr.E.D.Mich.1989).

In the present case, the record does not disclose when the Debtors began to rent out their farmland, nor the precise reason why they did so. However, such facts can be inferred from the evidence. Mr. Voelker had previously farmed with his younger brother. In 1979, the brothers split up and Otto Voelker incorporated his farm operation. At that time Mr. Voelker was 61 years old. Farming was a profitable occupation and land was rising in value. Incorporating a farming operation is one well-known method for an aging farmer to pass control over to the next generation. From the evidence, we find that the purpose for the incorporation and the corporate leasing of the farmland was to facilitate the estate plan of the Debtors and to involve the next generation of Voelkers in the family farming enterprise. This element of continuity leads us to conclude that the first of the enumerated criteria is satisfied in this case.

We also find that the present circumstances satisfy the second factor cited above. In *Rott*, the court noted that the debtors, "in working with their son in an attempt to save the farm, are so intertwined as a family farm operation, that the rental income must be characterized as income from a farming operation...." 73 B.R. at 373. Because the same kind of integrated family operation is present in this case, we find that the second factor listed above is also satisfied. *Cf. In re Burke*, 81 B.R. 971, 977, 18 C.B.C.2d 141 (Bankr.S.D.Iowa 1987) ("Cash rent arrangements with ... family members or relatives will create a rebuttable presumption that the debtor is engaged in farming.").

The third factor is also met, as farmland and a farm house are clearly "traditional farm assets."

With respect to the form of the lease, we note that the rent, although paid in cash instead of in shares, is not truly a cash rent. Ross Voelker, the president of Otto Voelker Farms, Inc., testified that the corporation pays his parents the fair market rental rate for the farmland it leases only if the corporation has enough money after paying its other bills and debt service. To the extent the corporation lacks the ability to pay all of its contractual obligations, it simply shortchanges the Debtors. This is their understanding as well as their practice. Thus, although they will never participate in the potential upside of farming, the Debtors do share the inherent risks of farming. The level of risk assumed by the Debtors suggests that their rental income is farm income. *See In re Armstrong*, 812 F.2d 1024 (7th Cir.), *cert. denied*, 484 U.S. 925, 108 S.Ct. 287, 98 L.Ed.2d 248 (1987); *Rott*, 73 B.R. at 373 (concluding that the debtors' rental income was subject to risk because the debtors likely received such income from their tenant/son only "because their son earned enough from his farm production to pay them").

Turning our attention to the sixth factor, we conclude that, for the reasons already discussed in connection with the question as to whether Mr. Voelker "operated" the farm, the Debtors continued to contribute labor toward the production of farm income. In this regard, the Chapter 12 trustee makes a useful analogy to the distinction between passive and non-passive investments found in the Internal Revenue Code. Under the tax code, a taxpayer is generally not able to report a loss or take a credit on an investment in a business activi-

ty unless he "is involved in the operations of the activity on a basis which is—(A) regular, (B) continuous, and (C) substantial." 26 U.S.C. § 469(h). Just as the non-passive investor is directly involved in those activities which generate income, the Debtors have performed a substantial amount of work on a regular basis that has helped to create the income produced by the farming operation. We therefore agree with the trustee that the Debtors' role in the corporation's farming operations is comparable to the role played by a non-passive investor, and we conclude that this level of participation suggests that the Debtors' rental income is farming income. *Compare Tim Wargo & Sons,* 869 F.2d 1128 (rental income held not to be farm income where none of the principals of the corporate debtor/lessor performed more than an insubstantial amount of farm duties); *In re Mary Freese Farms, Inc.,* 73 B.R. 508, 511, 15 B.C.D. 1226, 16 C.B.C.2d 1442 (Bankr.N.D.Ohio 1987) ("[A] corporate landlord must clearly do more than merely negotiate and accept cash rent payments from a tenant who makes all of the management decisions and does all of the 'hands-on' planting and harvesting.").

For the reasons identified above, most of the enumerated factors favor a finding that the rental income here constitutes farm income. We therefore hold that the $31,-200.00 in farm rental income qualifies as farm income for purposes of § 101(17) of the Bankruptcy Code. Accordingly, we hold that the Debtors are family farmers and are eligible to file the instant Chapter 12 petition. An order denying the Creditors' motion to dismiss the case will be entered.