**In re Roy E. HOSKINS a/k/a Gene Hoskins, Jennie D. Hoskins, Donald O. Thorndike a/k/a Pete Thorndike, and Betty L. Thorndike, d/b/a Hoskins-Thorndike Berry Farm, a partnership, Debtors.**

No. 86–83023.

United States Bankruptcy Court, C.D. Illinois.

May 28, 1987.

Barry M. Barash, Barash, Stoerzbach & Henson, Galesburg, Ill., for debtors.

Steven E. Davis, Lucas, Brown & McDonald, Galesburg, Ill., for Credit Union.

## OPINION AND ORDER

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

The Debtor, a partnership, filed a Chapter 12 proceeding and IH Mississippi Valley Credit Union ("Credit Union") filed both a Motion to Dismiss the Chapter 12 proceeding and an Objection to Confirmation of the Plan. The motion to dismiss and one of the objections to confirmation both raise the issue of whether the Debtor qualifies for Chapter 12 pursuant to Section 101(17)(B) which defines the term "family farmer" 11 U.S.C. § 101(17)(B). At the hearing on the Motion to Dismiss and for confirmation this Court ruled against the Credit Union on this issue.

This Court took under advisement the Credit Union's remaining objection to confirmation. The Debtor's plan proposes to pay certain creditors from income generated from its farming operations, and to pay the Credit Union, which holds a mortgage on certain real estate, by a payroll deduction on wages earned by the Debtor's individual partners from their non-farm jobs. The Credit Union objects to being paid in this manner, contending that under Section 1225(a)(6), 11 U.S.C. § 1225(a)(6), the Debtor will not be able to make all the payments under the plan and to comply with the plan because of possible creditor action against the individual partners which could result in the wages being subjected to wage deductions or turnover orders so they would not be available for purposes of the plan. In support of this position, the Credit Union cites *In re McGowan*, 24 B.R. 73 (Bankr.N.D. Ohio 1982), which held a Chapter 13 plan could not be confirmed where the debtor was relying upon voluntary contributions from outside sources such as parents or other relatives.

Section 101(18) defines "family farmer with regular annual income" to mean a "family farmer whose annual income is *sufficiently stable and regular to enable such family farmer to make payments under a plan under Chapter 12*". [Emphasis added.] 11 U.S.C. Section 101(18). This Court is not aware of any decisions construing Section 101(18), nor have the parties cited any. However, this definition is similar to the definition applicable to a debtor filing under Chapter 13 which defines an "individual with regular income" to mean an "individual whose income is

*sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13".* [Emphasis added.] 11 U.S.C. Section 101(29). As the language of the two sections is similar, the meaning of Section 101(18) can be determined by examining the meaning of Section 101(29).

When the Bankruptcy Code replaced the Bankruptcy Act, the eligibility requirements of a potential Chapter 13 candidate were drastically expanded. Under the Bankruptcy Act a wage earner was defined to mean someone who was dependent for a living upon the result of their individual effort without the aid of property or capital. Under the Bankruptcy Code, someone seeking relief under Chapter 13 can rely not only upon their own individual effort but can also rely on income derived from property or capital. 2 *Collier on Bankruptcy*, para. 101.19. Under the Act a debtor had to show his or her predominant and exclusive occupation was the earning of wages. Under the Code, that requirement is no longer applicable. The test is now whether a debtor has sufficiently stable and regular income, regardless of its source. That income can come from a variety of sources—wages, welfare payments, social security payments, fixed pension income, or investment income.

■ If the test for a Chapter 13 debtor is whether the debtor's income is sufficiently stable and regular to enable the debtor to make the payments, and if a Chapter 13 debtor can use various sources of income, such as wages and income from property and capital, to meet that test, it would seem that a Chapter 12 debtor should be treated similarly. In the Chapter 12 proceeding, if a debtor has sufficiently stable and regular income, be that income from farming operations or from non-farming sources such as contributions from the individual partners, the debtor should be able to have his plan confirmed.

■ Applying this analysis to the facts of this case, there was no evidence presented which established the individual partners' wages from their employment would not be sufficiently stable and regular to

enable the Debtor to utilize those wages to make payments under the plan. The Credit Union argues that because this is a partnership proceeding, creditors of the individual partners could take action to subject their wages to wage deductions or turnover proceedings which would destroy the stability and regularity of the plan's income. However, there was no proof such is occurring or was imminent. Without such proof it would be speculative for this Court to find payment of the wages will be interrupted by creditor action against the individual partners. If such did occur, the individual partners could file Chapter 13 proceedings to maintain the flow of income into the debtor's plan. Confirming the plan would not be to the Credit Union's detriment even if sometime in the future the Credit Union's concern would materialize. Until the income flow is interrupted, the Credit Union would be receiving payment. Should the income flow be interrupted, there are remedies available whereby the Credit Union could obtain permission to resort to its collateral.

Nor does this Court consider the decision in *In re McGowan, supra,* applicable to this case. In the *McGowan* case, the debtors were relying upon voluntary contributions from outside sources such as parents or other relatives. Obviously, the debtors in that case were not relying upon income generated as a result of their own individual effort, but were relying on income which was being contributed, and which could be terminated, at the will of their relatives. The possibility of such an arbitrary termination is not present in this case. The income from the individual partners' employment is the result of their own individual effort. The individual partners would not stop the flow of their wages into their partnership as such action would be the end of their plan, and although it could be terminated by their employer, common sense tells us that the possibility of that occurring is much less likely than the termination of a voluntary contribution by a family member. If the Credit Union's application of the *McGowan* case is the correct one, then most sources of income

would fail to qualify under Section 101(18) or Section 101(29), as there are very few sources of income which cannot in one manner or another, for some reason, be terminated.

For the reasons herein stated, the Credit Union's objection on the basis of 11 U.S.C. Section 1225(a)(6) is DENIED, and the Debtor is directed to prepare an order of confirmation.