**In re Robert R. KESSLER and Kristena L. Kessler, Debtors.**

**Bankruptcy No. 87–82246.**

United States Bankruptcy Court, C.D. Illinois.

June 8, 1988.

Barry M. Barash, Galesburg, Ill., for debtors.

S. David Simpson, McLaughlin, Hattery, Simpson & Sullivan, Galesburg, Ill., for Kerkers.

## OPINION AND ORDER

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

The debtor, Robert Kessler, works for Cargill and his wife, KRISTENA KESSLER, a joint debtor, works for Robert Morris College. For the last ten years they have also operated a mini cow-calf operation. Their tax returns for the years 1985 through 1987 indicate the following income from their employment and their cow-calf operation:

| Year | Employment Income | Cow–Calf Income |
|------|-------------------|-----------------|
| 1987 | $33,261.50 | [$10,995.31] |
| 1986 | $35,136.46 | [$16,024.04] |
| 1985 | $31,976.01 | [$ 8,777.86] |

In June of 1987 the debtors entered into a real estate installment contract whereby they agreed to purchase from Dale Kerker, Gene Kerker and Janet Gabbert (sellers) an 80 acre tract of real estate for $40,000.00 with a down payment of $2,000.00 and the balance payable over 17 years, the first payment being due June 1, 1988, with interest at 10% per annum. The 80 acre tract is located approximately twelve miles from the debtors' residence and is used in the cow-calf operation.

In September of 1987, the debtors filed a Chapter 13 proceeding. The debtors' amended plan asserts the 80 acre tract has a value of $12,000.00 and proposes to pay the sellers over a thirty year period, with the first payment due January 15, 1989, with interest at the rate of 10% per annum. Financing for the continued cow-calf operation would be provided by the debtors' neighbor, who would be acquiring the cow-calf herd and selling it back to the debtors with 6% interest, so that in three years the debtors would have reacquired their cow-calf herd. The sellers filed a pleading entitled "Objection to Plan of Reorganization, Adequate Protection, or in the Alternative for Relief From Automatic Stay". In that pleading they allege the existence of the installment contract, the provisions of the plan applicable to them, that the debtors have no equity in the 80 acre tract and it is not necessary to the success of the plan, and the debtors are not providing sellers with adequate protection. Prior to the hearing on confirmation and the seller's objections, the debtors and the sellers stipulated the 80 acre tract had a value of $16,000.00, an appropriate interest rate for the secured debt was 10% per annum, and the appropriate amortization period for repayment of this secured debt was 17 years, with a balloon payment for the balance due 5 years after confirmation of the plan. The stipulation further provided the sellers were not waiving their objection to feasibility and were not agreeing the 80 acre tract was necessary for an effective reorganization. At the time of the confirmation hearing the debtors were not in default under the installment contract. The relief which the sellers are seeking is to have this Court deny confirmation of the amended plan and to lift the automatic stay to allow them to proceed with their contractual remedies in state court to recover the 80 acre tract. In response, the debtors contend the only issue is whether the plan is feasible, which they contend it is. The debtors further contend that the sellers' other objections are irrelevant to confirmation under Section 1325, 11 U.S.C. Section 1325.

■ The first issue is whether the sellers are entitled to adequate protection. The sellers' contention that they are not being provided adequate protection cannot form the basis of an objection to confirmation of a Chapter 13 plan. Adequate protection is intended to protect a creditor during the period between the filing of the case and confirmation, and is not intended to provide protection once a plan is confirmed. From that point on, the creditor receives payment under the plan. Furthermore, under the decision in *United Savings Association of Texas v. Timbers of Inwood Forest Association, Ltd.,* —— U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), the sellers are not entitled to adequate protection, as there was no showing the 80 acre tract was depreciating in value. Therefore, the Court finds that the sellers are not entitled to adequate protection.

■ The next issue is whether the debtors' plan is feasible. In a Chapter 13 proceeding, feasibility is raised under Section 1325(a)(6), 11 U.S.C. Section 1325(a)(6), which provides a court shall confirm a plan, if, among other things,

"the debtor will be able to make all payments under the plan and to comply with the plan."

The sellers argue the cow-calf operation historically has lost money and in the future is at best a "break-even" operation. The debtors, in response, assert the plan is feasible because even if the cow-calf operation loses money, they will fund the plan with their employment income. In *In re Hoskins,* 74 B.R. 51 (Bkrtcy. C.D. Ill.1987), this Court held that a partnership Chapter 12 plan could be funded from both partnership income and the individual partners' non-farm income. The basis of that holding was that under Chapter 13, the debtor could utilize not only income derived from their individual efforts, but income from property or capital, the only test being whether a debtor has sufficiently stable and regular income, regardless of its source.[1] Having drawn the analogy from the provisions of Chapter 13 to a Chapter 12 proceeding, the Court now directly applies the concept in a Chapter 13 setting. There was no showing the debtors' employment income was anything but stable and regular, and there is no reason why their employment income could not be used to fund a Chapter 13 plan which provides for payment to the creditors of the cow-calf operation. Robert Kessler's income was projected to be $16,375.00, Kristena Kessler's, $13,367.00, and income from the cow-calf operation was projected at $5,600.00, for a total of $35,342.00. Expenses of the cow-calf operation are projected to be $5,265.00, with living expenses of $18,000.00, leaving a surplus to creditors of $12,077.00. Payments under the plan are projected to be $10,206.00, leaving a cushion of $1,870.00, all of which appears to make the plan feasible.

The next issue is whether the stay should be lifted under Section 362(d)(2), 11 U.S.C. Section 362(d)(2), even though the debtors' plan appears to be feasible. The resolution of that issue requires this Court to determine whether the 80 acre tract is "necessary to an effective reorganization". Section 1325(a)(1) requires a Chapter 13 to comply with all the applicable provisions of the Bankruptcy Code. A plan which fails to comply may be denied confirmation. 5 *Collier on Bankruptcy,* para. 1325.02(2). One of the provisions of the Bankruptcy Code applicable to a Chapter 13 proceeding is Section 362(d)(2). *The Matter of Leslie Boomgarden,* 780 F.2d 657 (7th Cir.1985). That section provides the automatic stay can be lifted

"(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization."

The debtors and the sellers agree the debtors have no equity in the 80 acre tract.

The courts are not in agreement as to the meaning of the phrase "necessary to an effective reorganization". Some courts have construed it to provide for a rehabili-

---

1. Citing 2 *Collier on Bankruptcy,* para. 101.19.

tation test, which is summarized at 2 *Collier on Bankruptcy*, para. 362.07(2), as follows:

"This alternative will be of little practical value to creditors in reorganization cases since in most cases the property will be needed for an effective reorganization, although the argument may exist that not every asset will be necessary for an *effective* reorganization. The reference to an 'effective' reorganization should require relief from the stay if there is no reasonable likelihood of reorganization due to creditor dissent or feasibility considerations. The lack of equity test should be most relevant in liquidation cases where a rehabilitation is not being sought and where, if there is no equity to be realized for junior interests, there is no reason to continue the stay. In addition, chapter 11 of the Code makes it clear in section 1123 that not every plan must envision a rehabilitation of the debtor. On the other hand, a chapter 12 or 13 plan will usually envision rehabilitation of the debtor and will normally constitute an 'effective reorganization' for purposes of section 362(d)(2)(B)."

Other courts have rejected the rehabilitation test and have construed the phrase to mean that property in which the debtor has no equity is necessary to an effective reorganization whenever it is necessary, either in the operation of the business or in a plan, to further the interests of the estate through rehabilitation or liquidation. *In re Koopmans*, 22 B.R. 395 (Bkrtcy.D.Utah 1982). In *In re Greiman*, 45 B.R. 574, 11 C.B.C.2d 1299 (Bkrtcy N.D. Iowa 1984), the court, in considering the meaning of the phrase, stated:

"While the court would not foreclose the possibility that the feasibility of reorganization would never be a determining factor in stay litigation, the primary thrust should not be a global injury [sic] into a debtor's financial prospects but the nexus between a specific property and the part it is likely to play in a reorganization effort. Basically the focus should be on whether the property in question can make an identifiable contribution to a debtor's reorganization, be it a liquidation or a rehabilitation. In line with this more limited focus, property may be necessary if it generates income that will benefit the estate or if it enhances the sale value of the business as a going concern."

■ This Court agrees with those courts which have rejected the rehabilitation test in favor of one which requires a showing that the property will generate income or increase the value of the business and thereby benefit the estate. In this case, the debtors' retention of the 80 acre tract would not benefit the estate and could possibly be detrimental to it. Historical data indicates the cow-calf operation has incurred substantial losses. The debtors' projections, at best, show a break even operation. The debtors acknowledge the cow-calf operation might operate at a loss and propose to provide for the loss through their employment income. Their estate would be better served by using those funds to pay current creditors rather than paying for additional losses from the cow-calf operation. Therefore, this Court finds the 80 acre tract is not necessary for an effective reorganization.

The last issue which requires this Court's consideration is the debtors' contention that the issue of removal of the stay is irrelevant to the real issue of whether the plan should be confirmed with the installment contract for the 80 acre tract being crammed down and reamortized based on its fair market value. To quote the debtors, the sellers have "mixed their metaphors, kumquats and grapefruits appearing in the same compote". While it is true debtors have a right to have a plan confirmed through cramdown and reamortization based on properties' fair market value, that right is not applicable to all property, but only to property which is necessary to an effective reorganization. If the 80 acre tract were necessary to reorganization, then the debtor could cramdown and reamortize as proposed. However, as this Court has found the property is not necessary to reorganization, such remedies are not available to the debtor.

**138**

IT IS, THEREFORE, ORDERED that confirmation of the amended Chapter 13 plan is denied and the automatic stay is removed so that the sellers may proceed with their remedies in state court to recover the 80 acre tract. It is further ordered that the debtors are given twenty-eight (28) days within which to amend their Chapter 13 plan in light of this Opinion if they so desire.