**In re George Roger EASTON, Elsie M. Easton, Debtors.**

**Bankruptcy No. 87–00345S.**

United States Bankruptcy Court, N.D. Iowa.

Sept. 10, 1987.

John Harmelink, Yankton, S.C., for debtors.

Carol F. Dunbar, Waterloo, Iowa, Trustee.

Janet J. Brown, Sioux City, Iowa, for PCA.

Karen McCarthy, Sioux City, Iowa, for Otoe County Nat'l Bank.

Steven H. Krohn, Council Bluffs, Iowa, for Metropolitan Life Ins. Co.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER DENYING MOTION TO DISMISS

MICHAEL J. MELLOY, Bankruptcy Judge.

The matter before the Court is the motion of Metropolitan Life Insurance Company (Metropolitan) to dismiss Debtors' Chapter 12 case on the grounds of ineligibility. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Having reviewed the pleadings, evidence, and briefs, the Court makes the following Findings of Fact and Conclusions pursuant to Fed.R.Bankr.P. 7052.

### FINDINGS OF FACT

Debtors filed their Chapter 12 petition on February 13, 1987. Their petition lists aggregate debts of $800,034.00 and total assets of $259,180.00.

Debtors own farm real estate in Plymouth County, Iowa, totalling (according to Schedule B–1) 512 acres. George Easton testified that he owns 518 acres, while the schedules show 504 acres subject to a first mortgage to Metropolitan. The discrepancy represented by these figures is immaterial.

Debtors also own 86 head of yearling cattle. George Easton testified that he assists in the farm operation "once in a while", and that he rents the farm acreage on a cash basis, partly to his grandson and the balance to a neighbor. The rent payments are collected in March and December.

The Debtor and his wife are each approximately 75 years of age. George Easton testified that the original acreage was purchased by him and his wife approximately forty years ago. That is the tract of land that they have lived upon and still reside on as of this date. Over the years additional purchases were made which brought the total acreage up to the 500 plus acres currently owned by the Debtors.

The Debtors financial difficulties arose out of their attempt to assist their grandson, Rick Easton, in establishing a farming operation. Rick Easton purchased approximately 10 acres from his grandfather upon which he constructed a hog confinement facility. Over $500,000 was borrowed from the Otoe County National Bank to construct that facility. The bank required George and Elsie Easton to co-sign the note for their grandson and pledge their farm real estate as security for that debt. In addition, Sioux City Production Credit Association also required George and Elsie Easton to co-sign their grandson's indebtedness and to also pledge part of their real estate for the PCA debt. Consequently, the financial liability of the George and Elsie Easton operation became intertwined with the farming operation of their grandson.

As indicated, Rick Easton and his wife own 10 acres of real estate which was formerly owned by George and Elsie Easton. Those 10 acres are within a few hundred yards of the George and Elsie Easton residence. Rick Easton and his wife reside in a mobile home which was erected adjacent to the George and Elsie Easton residence and is situated upon land owned by George and Elsie Easton. As stated above, part of the real estate which is owned by George and Elsie Easton is rented to their grandson.

The testimony concerning the 1986 farming income of George and Elsie Easton is somewhat confusing. However, a review of their 1986 tax return, taken together with the testimony elicited at the hearing, shows that George and Elsie Easton derived minimal income from the sale of cattle in 1986. The vast majority of their income was derived from the cash rent of their real estate and social security. If the cash rent received for the rental of their real estate to their grandson and a neighbor is determined to be nonfarming income, then George and Elsie Easton clearly do not meet the 50 percent income test. On the other hand, if the cash rent is determined to be farm income, then George and Elsie Easton derived more than 50 percent of their income in 1986 from farming operations.

## DISCUSSION AND CONCLUSIONS OF LAW

Eligibility for relief under Chapter 12 is limited to family farmers with regular annual income. 11 U.S.C. § 109(f). "Family farmer" is defined as (1) an individual or individual and spouse engaged in a farming operation, (2) whose aggregate debts do not exceed $1,500,000, (3) and not less than 80 percent of whose aggregate noncontingent, liquidated debts, on the date of filing, arise out of a farming operation owned or operated by such individual(s), and (4) such individual(s) receive from such farming operation more than 50 percent of gross income for the taxable year preceding the taxable year in which the case was filed. 11 U.S.C. § 101(17)(A).

■ The issue which must be decided by this Court is whether Debtors who have substantially retired from active farming, but continue to reside upon the farm itself and cash rent at least part of their farm real estate to a family member should qualify for Chapter 12 relief. This Court concludes that when taking all of the circumstances into consideration in this case, George and Elsie Easton are eligible for Chapter 12 relief. The facts which this Court feels are important in reaching this conclusion are as follows:

1. The farm in question is the homestead of the Debtors and has been owned and actively farmed by them for 40 years.

2. The Debtors do engage in a traditional farming operation, that is, the raising of cattle, although the income from the cattle sales represents only a small part of the Debtors' total annual income.

3. The majority of the debts owed by the Debtors arise out of a family farm operation, that is the debts represent the grandfather's guarantee of his grandson's debts for the hog confinement facility and hog raising operation.

This Court has previously held that a family farm corporation which only negotiates leases and accepts rent payments does not conduct a farming operation as required in § 107(17)(B) of the Bankruptcy Code. *In re Mary Freese Farm, Inc.*, 73 B.R. 508 (Bankr.N.D.Iowa 1987). The movants in this case have requested this Court to take the *Mary Freese Farms* case one step further and hold that cash rent is "per se" nonfarm income. Support for this position is found in the case *In re Armstrong*, 812 F.2d 1024 (7th Cir.1987).

This Court believes, however, the better reasoned approach is represented by the minority opinion in the *Armstrong* case. The minority opinion holds that there cannot be a per se rule on whether cash rent is or is not farm income. Each case must be evaluated on its own merits, taking into consideration the total farming operation. Several recent bankruptcy court decisions interpreting the Chapter 12 eligibility test have adopted a similar approach. *See In re Rott*, 73 B.R. 366 (Bankr.D.N.D.1987) (the court declined to adopt the Armstrong inflexible approach to cash rent); *In re Welch*, 74 B.R. 401 (Bankr.S.D.Ohio 1987) (*Black's Law Dictionary* defines the verb "farm" to include leasing or renting); *In re Mikkelsen Farms, Inc.*, 74 B.R. 280, 285 (Bankr.D.Or. 1987) ("... the leasing of farm land, for either cash or crop share, has been an integral part of many family farm operations throughout this country for years.")

This Court believes this approach is more consistent with the policy statement which underlies Chapter 12. The legislative history shows that Chapter 12 was designed to help those individuals and corporations which truly engage in farming operations. The income and debt limit eligibility tests were intended to deny the protection of Chapter 12 to tax shelter and large corporate entities. Senator Grassley, a Chapter 12 sponsor, stated that "[the Chapter 12] provisions ensure that only family farmers —not tax shelters or large corporate entities—will benefit." 132 Cong.Rec. S15076 (daily ed. October 3, 1986). Keeping this purpose in mind, this Court does not believe it was the policy intent of Congress to deny Chapter 12 protection to individuals such as George and Elsie Easton who have been engaged in farming and have lived upon the farm for over 40 years.

In this case, George and Elsie Easton are engaged in the process of transferring their farm from one generation to the next. In doing so, they continue to reside on the farm and conduct limited farming operations. This Court believes that the cash rent received from rental of part of the farm to the next generation of the Easton family should be included in the farm income. As stated in the *Welch* case, "James Welch has worked as a farmer, worked their own farm land, and suffered the severe financial distress common to many farmers. To hold that he is anything other than a 'family farmer' would be a travesty upon and a trampling of the intention of Congress as defined by the legislative history of the Chapter 12 legislation." 74 B.R. at 405. Likewise, to find that George and Elsie Easton are not family farmers when they reside upon the farm land with their grandson who actively farms the land would not be consistent with the policy behind the enactment of Chapter 12.

Accordingly, this Court finds that the Debtors, George and Elsie Easton, are engaged in a traditional farming operation and derived more than 50 percent of their 1986 income from a farming operation. Debtors are "family farmers" and they are entitled to seek the protection of Chapter 12 of the Bankruptcy Code.

## ORDER

IT IS THEREFORE ORDERED that the motion to dismiss filed by Metropolitan Life Insurance Company is denied.