In re Gilford Norman SMITH, Mary Jacqueline Smith, Debtors.

Bankruptcy No. 5–88–00455(2)12.

United States Bankruptcy Court,
W.D. Kentucky.

June 1, 1989.

Jane Bondurant, Louisville, Ky., for Farmers Home Admin.

Bill Cunningham, Eddyville, Ky., for debtors.

Logan B. Askew, Hopkinsville, Ky., for Federal Land Bank of Louisville.

## MEMORANDUM–OPINION

J. WENDELL ROBERTS, Chief Judge.

This matter is currently before the Court on the motion of the Federal Land Bank of Louisville ("Land Bank") to dismiss the proceeding on the ground that the debtors, Gilford Norman and Mary Jacqueline Smith, ("debtors") are ineligible for relief under Chapter 12 of the Bankruptcy Code. Both Land Bank and the debtors have filed briefs on the eligibility issue and the Court has reviewed same. For the reasons set forth below, the Court must sustain Land Bank's motion to dismiss.

The debtors filed their Chapter 12 bankruptcy proceeding on August 26, 1988. According to their statement of financial affairs, the Smiths reported farm income in the amount of $41,885.00 and non-farm income in the amount of $37,189.00 in 1987. Included in the debtors' farm income are insurance proceeds in the amount of $25,-000.00 representing payment for the destruction of the debtors' combine.

The narrow issue before the Court is whether or not the insurance proceeds from the destruction of the debtors' com-

bine constitute income from a farming operation as defined by the Bankruptcy Code. It is not surprising that the debtor argues that the insurance proceeds do constitute farm income since the combine which was destroyed was used in the farming operation.

█ Only a family farmer with regular annual income may be a debtor under Chapter 12. The Bankruptcy Code defines a "family farmer" in § 101(17)(A), which states in part:

(17) "Family farmer" méans—

(A) individual or individual and spouse engaged in a farming operation ... and [they] receive from such farming operation more than fifty percent of [their] gross income for the taxable year preceding the taxable year in which the case concerning [them] was filed ...

Since the debtors filed their bankruptcy proceeding in August of 1988, the Court must consider their gross income only for the taxable year of 1987 in order to determine whether or not they qualify as family farmers. As stated previously, the debtors' reported farm income is greater than 50% of their total gross income. However, if the Court excludes the $25,000.00 insurance payment from the debtors' farm income, the debtors clearly would not have had the requisite farm income to meet the eligibility requirements of a "family farmer."

The Seventh Circuit in *Matter of Wagner*, 808 F.2d 542 (7th Cir., 1986), recently decided a similar issue involving a determination of whether an IRA distribution to a farmer constituted income from a farming operation. The *Wagner* Court held that the term "gross income" was to be given the same meaning in the Bankruptcy Code as it is given in the federal income tax laws. The Court states:

Often and here, creditors know a fair amount about their debtor's income ... and can readily determine what his gross income for tax purposes was last year and how much of it came from farming; if they don't know, and file a petition for involuntary bankruptcy and, in fact, the

debtor derives more than 80% of his gross income from farming, the debtor will quickly tell them and prove it by his tax return. But for either creditor or debtor to decide what the debtor's gross income is in some sense of "gross income" that is significant for the policy of the bankruptcy law would be an altogether more uncertain undertaking, at least until the courts had evolved a jurisprudence of gross income for this purpose ... debtors and creditors ought to be able to know from the start whether the debtor is exempt from bankruptcy; they would not know until much later if we embarked on the protracted undertaking of constructing, in common law manner, case by case, a new jurisprudence of gross income. *In re Wagner* at p. 547.

Two months after *Wagner* was decided, the Seventh Circuit issued a second opinion involving the issue of whether income was derived from a farming operation. In the case of *Matter of Armstrong*, 812 F.2d 1024 (7th Cir., 1987), one of the issues was whether or not the proceeds derived from the sale of farm machinery constitute farm income. In arriving at its conclusions, the Court of Appeals declined to follow the income tax approach applied in *Wagner*, but, rather, examined the relationship between the asset sold and the farming operation. The Court of appeals stated that:

In the instant case, Armstrong's farm machinery was inescapably interwoven with his farming operation. Importantly, it is undisputed Armstrong was never in the business of buying, selling or trading such machinery. The machinery was purchased to work the acreage that represented Armstrong's farming operation. Had the farm prospered, the machinery would have stayed in Armstrong's possession. He bought the machinery so the farm could exist and prosper ...

█ This Court finds both the *Wagner* and *Armstrong* cases helpful in resolving this issue. In cases involving ordinary income, this Court is inclined to adopt the income tax approach used in *Wagner* since it is a mechanical test providing uniformity and certainty in application. The Court can

quickly determine whether income is farm income by referring to the debtors' Schedule F. However, when the income is derived from capital gains which are not included in the debtor's Schedule F, the Court will look at the relationship between the property sold and the farming operation, following the rationale in *Armstrong*. (See also *In re Shepherd*, 75 B.R. 501 (Bkrtcy., N.D.Ohio, 1987), which supports our conclusions).

In *Armstrong*, the Court determined that the proceeds from the sale of farm equipment were farm income after considering the definition of a farming operation set forth in § 101(20). The Court stated:

Implicit in this definition is the inclusion of general activities in farming and, we believe, the means (or in this case the equipment) necessary to perpetuate the farming operation the definition speaks of. When a farmer sells some of his machinery in an effort to scale down his operation (say from 200 to 100 acres) and save the farm, the money received is inescapably from the 50% of the farming operation dissolved.

The Court in *Armstrong* had some basis for determining that the capital gains which accrued from the sale of the equipment were farm income. In essence, the Court stated that it simply would not be fair if "farmers in financial trouble could harvest their crop in a given year, decide to scale down their operation, sell machinery and be considered non-farmers even though they had no significant outside employment." *Armstrong*, supra at p. 1026.

Evaluating the facts and circumstances surrounding this case, the Court is not faced with such a situation. But for the debtors' receipt of the insurance proceeds, the debtors would clearly not be eligible for Chapter 12 relief since aside from the proceeds, more than 50% of the debtors' income was derived from non-farm income. The Court does not deny that the debtors are involved in farming activities, however, Congress clearly defined the family farmer as one whose farming income amounted to more than 50% of his total income. The Court is in agreement with Land Bank's argument that the destruction of a combine by fire is not a general farming activity necessary to perpetuate a farming operation, such as the sale of equipment to scale down an operation. (Land Bank's Brief at p. 10). Accordingly, the Court concludes that the debtors cannot meet the definition of "family farmer" under § 101(17)(A) and, therefore, they may not proceed under Chapter 12 of the Bankruptcy Code.