**In re George L. WAY, Jr., Debtor.**

**Bankruptcy No. 89–09462–H4–12.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

June 25, 1990.

J. Michael Dorman, Frank Sommerville, for Texas Commerce Bank–Beaumont; Lid-dell, Sapp, Zivley, Hill & LaBoon, Houston, Tex., of counsel.

Mehaffy & Weber, for George R. Way, Jr.; John J. Durkay, Beaumont, Tex., of counsel.

M.H. McGinnis, Moody, Tex., Chapter 12 Trustee.

## MEMORANDUM

WILLIAM R. GREENDYKE,
Bankruptcy Judge.

This matter is before the Court upon the motion of Texas Commerce Bank—Beaumont (TCB) to dismiss this Chapter 12 proceeding. The Creditor has contested the eligibility of the Debtor to file for relief under Chapter 12.

## FACTS

Debtor filed his petition under Chapter 12 of Title 11 on December 27, 1989 and an amended Chapter 12 statement on February 2, 1990. TCB asked this Court to dismiss the petition for cause pursuant to section 1208 of the Bankruptcy Code. TCB bases its Motion to Dismiss on two grounds: (1) Debtor fails to qualify as a "family farmer" under section 101(17) of the Bankruptcy Code and (2) Debtor exhibited a lack of good faith in filing the petition. A hearing on TCB's Motion to Dismiss was held on April 30, 1990. The Court orally made initial findings of fact and conclusions of law, determined the case was filed in good faith and took the matter under advisement to determine whether Debtor had sufficient farm income to qualify as a "family farmer". A disputed question in Debtor's original brief was whether Debtor's director's fees from two corporations were properly classified as farm income. On May 3, 1990, Debtor supplemented his brief in response to TCB's Motion to Dismiss. In his supplemental brief the Debtor raised an argument that has not been brought to the attention of the court on any prior occasion. The question presented is whether the Court should look at non-taxable agricultural subsidy payments to determine the Debtor's gross income. TCB's Motion to Dismiss was de-

nied by Order entered on June 13, 1990. The findings of fact and conclusions of law which were made verbally into the record on April 30, 1990, are supplemented by the following discussion.

## DISCUSSION

### I.

The Court will direct its attention first to the question raised in Debtor's supplemental brief concerning inclusion of non-taxable income in a gross income analysis.

According to section 109(f) of the Bankruptcy Code, only a "family farmer" may be a debtor under Chapter 12 of this title. The definition includes an income test for eligibility which in this case requires the Debtor to show gross income from his family farm operation for the taxable year of 1988 in excess of fifty percent of his total gross income. The term "gross income" is not defined in the Bankruptcy Code. *In Matter of Wagner*, 808 F.2d 542 (7th Cir. 1986), the Seventh Circuit held that the gross income under section 101(17)(A) should be equated with the gross income definition as defined in section 61 of the Internal Revenue Code.

Sec. 61(a) of title 26 defines gross income as "all income from whatever source derived, except for those items specifically excluded by the Code."

*Wagner* dealt with the problem of how to treat withdrawals made from the Debtor's IRA account, but the rationale for the use of the federal income law to interpret "gross income" under the Bankruptcy Code is still applicable. The main advantage of the mechanical *Wagner* test is that it provides certainty and uniformity of application. Creditors can ascertain their remedies at the time of extending credit to the farmers and farmers know whether they are exempt from involuntary bankruptcy. *In re Pratt*, 78 B.R. 277, 279 (Bankr.D. Mont.1987).

This Court agrees that the threshold determination of eligibility for exemption from involuntary relief (or, in this case, Chapter 12 eligibility) should not be subject to uncertainty, but holds that there should

be a narrow exception to the strict application of the test.

Pursuant to section 101(17), only income from the preceding tax year is to be considered in determining whether debtors meet the definition of "family farmer". *In re Nelson*, 73 B.R. 363, 365 (Bankr.D.Kan. 1987).

■ Gross income from farming includes amounts the farmer receives from cultivating the soil or raising or harvesting any agricultural commodities. Under farm programs like the Conservation Reserve Program ("CRP"), owners and operators of highly erodible cropland may enter into a long-term contract with the Secretary of Agriculture providing for conversion to a less intensive use of that cropland. By contracting with the U.S. Department of Agriculture, Agricultural Stabilization Conservation Service ("ASCS") not to place farm land into production, the farmer foregoes the possibility of generating farm income by growing crop and selling it. Agricultural program payments are considered farm income. *In re Welch*, 74 B.R. 401, 403 (Bankr.S.D.Ohio 1987), *In re Shepherd*, 75 B.R. 501, 504 (Bankr.N.D.Ohio 1987).

Agricultural program payments can be excluded from income, if the payment is for a capital expenditure, does not substantially increase the farmer's annual income from the property, and the Secretary of Agriculture certifies that it was made primarily for conservation of soil and water resources, protection or restoration of the environment, improvements of forests or to provide a habitat for wildlife. I.R.S., U.S. Dep't of the Treas., Pub. No. 225, Farmer's Tax Guide, at 12 (1989). By giving the farmer the option to exclude part or all of the payments the farmer receives under certain federal or state cost-sharing conservation, reclamation, or restoration programs, the government provides an incentive to the farmer to actively participate in environmental protection programs.

■ Debtor in this case evidenced a gross income of $138,379 for the tax year of 1988 on his Schedule F (Form 1040), "Farm Income and Expenses". He re-

ceived a total of $119,173 in agricultural payments, of which $54,168 was reported as taxable on line 7b of Schedule F. All government payments, such as those for conservation practices, must be included in income, except those which the taxpayer elects to exclude from income under guidelines established for certain cost-sharing conservation programs. I.R.S., Pub. No. 225 *supra*, at 10. Since Debtor only entered $54,168 as taxable on Schedule F of his tax return, the Court finds Debtor elected to report, but nevertheless excluded from "taxable" income, $65,005 of the government payments. The Court agrees with the Debtor, that to determine whether the fifty percent threshold test of Debtor's gross income is satisfied, the total amount of agricultural subsidy payments should be considered and the analysis should not be limited to the taxable amount.

Even though a farmer elects to declare a certain part of his agricultural payments as "non-taxable" gross income, it is nevertheless *income* derived from farming. The congressional intent for enacting Chapter 12 was to tailor relief under the Bankruptcy Code for farmers who need financial rehabilitation. While most family farmers had too much debt to qualify as debtors under Chapter 13, Chapter 11 proved to be too complicated, time-consuming and expensive for family farmers. *In re SFW, Inc.*, 83 B.R. 27, 30 (Bankr.S.D.Cal.1988). According to legislative history, the fifty percent threshold was added to prevent high income, low non-farm debt tax shelter investors from qualifying for relief under Chapter 12. P.L. 99–554 (H.R. 5316), *quoted in Pratt*, 78 B.R. at 278. A sampling of cases in accord with the *Wagner* decision, *supra*, indicates most dealt with the need to focus on gross income without any business or itemized deductions used to arrive at adjusted gross or taxable income results. *In re Fogle*, 87 B.R. 493, 497 (Bankr.N.D. Ohio 1988) (gross income is computed without regard to those allowable deductions in determining taxable income), *Matter of Faber*, 78 B.R. 934, 936 (Bankr.S.D.Iowa 1987) (adjusted gross income is defined as gross income minus allowable deductions; thus, those items deducted from gross income

are included in gross income), *In re Pratt*, 78 B.R. at 280 (for farmers using the cash method of accounting, gross income means all cash, or the value of merchandise or other property received from the sale of livestock and produce which he has raised, profits from the sale of livestock or other items which have been bought by him, and gross income received from all sources) (citing U.S. Master Tax Guide, CCH 1986 section 771)).

In the case at bar, common sense dictates that the subsidy payments are farm income and should be considered an aspect of "gross income" in our bankruptcy context notwithstanding the general rule enunciated in *Wagner*. This court concludes that inclusion of the non-taxable part of the ASCS program payments as farm income is consonant with congressional intent.

## II.

The court now addresses the issue of the director's fees paid to Debtor by the affiliated corporations.

Debtor received $18,120 as director's fees from two farming corporations (WA-DA Farms, Inc. and B.E.S. Farming, Inc.). Debtor, who owns a fifty percent interest in the two corporations, asserts that because he actively participated in the farming operations, his director's fees should be included in the calculation of farm income pursuant to section 101(20) of the Bankruptcy Code.

The Seventh Circuit in the leading case of *In Re Armstrong*, 812 F.2d 1024 (7th Cir.1987) determined the existence of a "farming operation" based upon whether the debtor was engaged in a risk-laden venture. The question in this case is whether the Debtor is an individual who owns or operates a farming operation in order to qualify under 11 U.S.C. section 101(17)(A). According to *Matter of Burke*, 81 B.R. 971, 977 (Bankr.S.D.Iowa 1987), wages, fees or payments that result from a farming activity and relate to the farming operation can result in farm income. While the *Burke* Court suggests a liberal construction of the term "farming activity", it

**84**

also points out that it "must somehow relate to the debtor's farming operation, not the farming operation of others." *Id.* at 977. It is also interesting to note that since Debtor's ownership is limited to a fifty percent interest in the two corporations the corporations would not qualify separately as a "family farmer" under 11 U.S.C. section 101(17)(B).

This Court finds that the director's fees cannot be considered farm income because the principal risk of loss with regard to the farming activity rested with the separate entities, the corporations.

Therefore, based on this Court's prior verbal findings and the foregoing discussion, this Court concludes Debtor qualifies as a family farmer.