**In re Gary Ray KOENEGSTEIN and Myrna Koenegstein, Debtors.**

**Bankruptcy No. 91–40350.**

United States Bankruptcy Court, S.D. Illinois.

Aug. 12, 1991.

282

Robert Shaw, Mt. Vernon, Ill., for debtors.

Steven Wallace, E. St. Louis, Ill., for Magna Bank of Centralia.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

At issue in this case is whether the debtors can satisfy the 50 percent gross income test for qualification as family farmers under § 101(18) of the Bankruptcy Code. *See* 11 U.S.C. § 101(18).[1] The Court must decide whether social security disability benefits received by the debtors, which are excluded from gross income for purposes of determining the debtors' federal income tax liability, should nevertheless be included as a component of the debtors' income in determining qualification for relief under the family farmer provisions of Chapter 12.

Debtors Gary and Myrna Koenegstein filed their Chapter 12 bankruptcy petition on March 13, 1991. The debtors disclosed that in tax year 1990 preceding their bankruptcy filing, they received farm income of $10,200, oil royalties of $5,700, and social security disability benefits of $20,440.

Magna Bank of Centralia ("Bank") seeks dismissal of the debtors' Chapter 12 petition, alleging that the debtors do not satisfy the income requirements set forth in § 101(18) for determining who may be a family farmer entitled to relief under Chapter 12. Section 101(18) states that "family farmer" means an individual or individual and spouse engaged in a farming operation who

> receive from such farming operation more than 50 percent of [their] gross income for the taxable year preceding the taxable year in which the case ... was filed....

11 U.S.C. § 101(18). The Bank contends that because more than half of the debtors' 1990 income was derived from sources other than farming, *i.e.*, oil royalties and social

---

1. Former § 101(17) of the Code defining "family farmer" was redesignated by amendment effective November 29, 1990, as § 101(18). *See* Pub.L. No. 101–647, 104 Stat. 4916 (1990). To avoid confusion, all references to former section § 101(17) will be to § 101(18).

security disability payments, the debtors do not qualify as family farmers eligible for Chapter 12 relief.

In response, the debtors have submitted a "pro forma" tax return for 1990 [2] accompanied by an affidavit from their tax preparer who estimates that operating losses from prior years will more than offset the debtors' ordinary income for 1990, which will result in no portion of the debtors' social security benefits for 1990 being included in the debtors' gross income. The debtors contend that "gross income" under § 101(18) should be measured by the debtors' gross income for tax purposes and assert that since their social security benefits are excluded from taxable income under the Internal Revenue Code, these benefits should not be considered in the 50 percent test of § 101(18).

The pro forma tax return submitted by the debtors shows that the debtors accumulated $72,444 of net operating losses in years 1984 to 1989. In 1990, they had debts forgiven in the amount of $30,513. The debtors' net operating loss carryforward from prior years was reduced by the amount of the debt forgiveness, yielding a loss of $41,931 for 1990. This loss served to offset the debtors' income from farming operations and oil royalties, and their tax return showed a negative amount of $34,-644 as the debtors' total income for 1990.

Pursuant to § 86 of the Internal Revenue Code, the debtors' social security disability payments were not listed as income on the debtors' tax return. That section provides a formula for determining the extent to which social security benefits must be included in the taxpayer's gross income and be subject to tax.[3] Under § 86, gross income includes social security benefits in an amount equal to the lesser of (1) one-half of the annual benefits received or (2) one-half of the excess that remains after subtracting the appropriate base amount from the sum of the taxpayer's modified adjusted gross income and one-half of his benefits. 26 U.S.C. § 86(a), (b)(1). "Modified adjusted gross income" is defined as adjusted gross income determined without reduction for specified exclusions and increased by tax exempt interest received by the taxpayer (*e.g.*, municipal bond interest). 26 U.S.C. § 86(b)(2). The "base amount" referenced in § 86 ranges from zero for certain married individuals filing singly to $32,000 for individuals filing a joint return. 26 U.S.C. § 86(c). Under this formula, the maximum amount of benefits a taxpayer could be required to include as taxable income is one-half of the benefits received, while taxpayers who qualify for the maximum base amount and have little or no modified adjusted gross income would not be required to include any portion of their benefits in gross income for tax purposes.

**2.** The debtors' tax return for 1990 has not yet been filed because their tax preparer is awaiting further information concerning operating losses incurred by the debtors in previous years.

**3.** Section 86 provides in pertinent part:
(a) *In General.*
Gross income for the taxable year of any taxpayer described in subsection (b) includes ... social security benefits in an amount equal to the lesser of—
(1) one-half of the social security benefits received during the taxable year, or
(2) one-half of the excess described in subsection (b)(1).
(b) *Taxpayers to whom subsection (a) applies.*
(1) *In general.* A taxpayer is described in this subsection if—
(A) the sum of—
(i) the modified adjusted gross income of the taxpayer for the taxable year, plus
(ii) one-half of the social security benefits received during the taxable year, exceeds

(B) the base amount.
(2) *Modified adjusted gross income.* For purposes of this subsection, the term "modified adjusted gross income" means adjusted gross income
(A) determined without regard to this section and sections 135, 911, 931, and 933, and
(B) increased by the amount of interest received or accrued by the taxpayer during the taxable year which is exempt from tax.
(c) *Base amount.* For purposes of this section, the term "base amount" means—
(1) except as otherwise provided in this subsection, $25,000,
(2) $32,000, in the case of a joint return, and
(3) zero, in the case of a taxpayer who—
(A) is married at the close of the taxable year ... but does not file a joint return for such year, and
(B) does not live apart from his spouse at all times during the taxable year.
26 U.S.C. § 86.

As indicated, the debtors' income for 1990 was offset by their substantial operating loss carryforward from prior years so that they had a negative modified adjusted gross income. Since the sum of the debtors' modified adjusted gross income and one-half of their benefits did not exceed the debtors' applicable base amount of $32,000, the entire amount of the debtors' social security benefits for 1990 was excluded from gross income for tax purposes under § 86.

If, as the debtors argue, the tax code definition of gross income must be used to determine their eligibility for Chapter 12 relief, their social security benefits of $20,440 would not be included in calculating the debtors' income for 1990, and their farm income of $10,200 would constitute more than half of their gross income as required for family farmers under § 101(18). Conversely, if the debtors' social security benefits are included in gross income, the debtors' farm income would constitute less than half of their total income, and the debtors would not meet the 50 percent test of § 101(18) for qualification as family farmers under Chapter 12.[4]

In arguing that their social security disability income should be excluded from the determination of gross income for purposes of § 101(18), the debtors rely on the Seventh Circuit's decision in *Matter of Wagner*, 808 F.2d 542 (7th Cir.1986). In *Wagner*, the court considered whether income which the debtor received as a distribution from his individual retirement account ("IRA") should be included as part of the debtor's gross income in determining whether the debtor was a "farmer" and thus exempt from involuntary bankruptcy under 11 U.S.C. § 303(a). The *Wagner* court, noting the "painful statutory evolution" the definition of "farmer" had undergone prior to the 1978 Bankruptcy Code (*id.* at 544), found that Congress' substitution of the gross income test in § 101(17) (now 11 U.S.C. § 101(20)) was an effort to create a mechanical and easily applicable test for "farmer" rather than a test that

would reflect the economic realities of farming. *Id.* at 547. The court acknowledged that Congress may have used the term "gross income" not in a tax sense but to make clear that the bankruptcy exemption could be used by farmers whose net income was low because of heavy expenses. The *Wagner* court further noted the incongruity of an individual whose income consisted mostly of municipal bond interest, which is not counted as gross income for tax purposes, coming within the definition of "farmer" entitled to the § 303(a) exemption. *Id.* at 546–47. The court concluded, however, that the virtues of certainty and easy application overrode the difficulties inherent in adopting an income tax definition of gross income and held that, under such a definition, the debtor's IRA withdrawals constituted income rather than a return of capital, rendering the debtor ineligible for the farmer exemption from involuntary bankruptcy.

Many courts, including this Court (*see In re Cox*, 93 B.R. 625 (Bankr.S.D.Ill.1988); *In re Bergmann*, 78 B.R. 911 (Bankr.S.D.Ill. 1987)), have followed *Wagner* in utilizing the tax code definition of gross income to determine eligibility as a family farmer under Chapter 12. While some of these courts have espoused a rule of strict adherence to tax return declarations of income (*see In re Pratt*, 78 B.R. 277 (Bankr. D.Mont.1987); *In re Nelson*, 73 B.R. 363 (Bankr.D.Kan.1987)), other courts have cautioned that a strict tax code approach should be modified or abandoned in those cases in which a tax code solution would be "absurdly irreconcilable" with the Chapter 12 statutory provisions and legislative history. *Matter of Faber*, 78 B.R. 934, 935 (Bankr.S.D.Ia.1987); *see In re Way*, 120 B.R. 81 (Bankr.S.D.Tex.1990); *In re Snider*, 99 B.R. 374 (Bankr.S.D.Ohio 1989).

In a decision rendered shortly after *Wagner*, the Seventh Circuit itself adopted a less rigid posture in determining the related issue of what constitutes farm income. *Matter of Armstrong*, 812 F.2d 1024 (7th

---

**4.** The debtors' pro forma tax return gives the actual figures for gross farm income as $10,464 and for oil royalties as $5,772. Using these figures, the debtors' total gross income would be $16,236 without the social security benefits or $36,676 with the social security benefits.

Cir.1987), involved income derived from the sale of farm machinery as well as from cash rental of the debtor's land. The *Armstrong* court made no mention of the tax code test of *Wagner* but instead employed a risk-based analysis that looked to the relationship between the source of the debtor's income and his farming operation. While not necessarily inconsistent with *Wagner*, the *Armstrong* decision at least indicates that strict adherence to an income tax definition of income is not required when it would lead to illogical results at odds with the statutory purpose of Chapter 12. *See In re Snider: Armstrong* cited as authority for modifying gross income test of *Wagner; see also In re Smith*, 109 B.R. 241 (Bankr.W.D.Ky.1989): both *Wagner* and *Armstrong* approaches found to be helpful depending on factual circumstances.

The Court, having considered the nature and scope of the § 86 exemption for social security income and the statutory purpose of the Chapter 12 family farmer provisions, finds that this case presents a situation in which a strict tax code interpretation of gross income leads to illogical results and should be modified. Social security benefits are paid pursuant to a social insurance program for wage earners and their dependents (*see In re Buren*, 725 F.2d 1080 (6th Cir.1984)), and § 86 reflects a policy decision that such benefits should be exempt from taxation to the extent the recipient meets the income limitations of that section. Thus, § 86 provides special tax treatment for social security benefits through an exception to the general tax code definition of "gross income" as "all income from whatever source derived." 26 U.S.C. § 61.

While social security benefits are exempt from taxation, they nevertheless constitute real income of the debtors. Social security income is one of the sources of income that may be considered in determining whether a Chapter 13 debtor's income is "sufficiently stable and regular" for eligibility under that chapter. *In re Buren*, 725 F.2d at 1082. Social security income has also been cited as a source of income to be considered in determining whether a Chapter 12 debt-

or will be able to make all payments under his plan as required for confirmation (11 U.S.C. § 1225(a)(6)). *See In re Hoskins*, 74 B.R. 51 (Bankr.C.D.Ill.1987): Chapter 12 debtor, like Chapter 13 debtor, may use various sources of income including social security payments to fund plan. Indeed, in the present case, the debtors' social security disability income would undoubtedly be a factor in determining their ability to make plan payments under a proposed plan. Thus, common sense dictates that this income be considered as an aspect of gross income in determining the debtors' eligibility for Chapter 12 relief notwithstanding the general rule enunciated in *Wagner*.

The Court has found no case addressing the issue of inclusion of tax-exempt social security income in calculating a debtor's gross income for qualification as a family farmer under § 101(18). In at least a few of the reported cases, courts have, without discussion, considered social security income as part of the debtors' total income for purposes of § 101(18). *See In re Voelker*, 123 B.R. 749 (Bankr.E.D.Mich. 1990); *In re Easton*, 79 B.R. 836 (Bankr. N.D.Ia.1987), *aff'd* 883 F.2d 630 (8th Cir. 1989); *see also In re Tart*, 73 B.R. 78 (Bankr.E.D.N.C.1987). In the analogous situation of nontaxable agricultural subsidy payments, the court in *In re Way*, 120 B.R. 81 (Bankr.S.D.Tex.1990), ruled that although the debtor was allowed to exclude these payments from taxable income for the year in question, they nevertheless should be included in the debtor's gross income in determining his eligibility for Chapter 12 relief. The *Way* court noted that the 50 percent threshold test of § 101(18) was added to prevent high income, low non-farm debt tax shelter investors from qualifying for Chapter 12 relief and that cases following *Wagner* dealt with the need to focus on gross income without any business or itemized deductions used to arrive at adjusted gross or taxable income results. The court acknowledged the virtues of the tax code approach of *Wagner*, but found that a strict application of that test was inappropriate in the case of actual

income excluded from the definition of gross income only under special tax provisions.

The exclusion of social security benefits from taxable income here, like the exclusion for agricultural subsidy payments in *Way*, represents a special tax provision that bears no relation to the purpose of Chapter 12 to provide relief to family farmers in need of financial rehabilitation. While the income test of § 101(18) is admittedly arbitrary at best (*see Wagner*), determination of the extent to which a debtor's income is derived from farming should not be obscured further by the exclusion of actual income pursuant to § 86.

The Court notes that under the § 86 formula, the characterization of social security benefits as gross income depends on a comparison with the taxpayer's other income and whether or not this income exceeds the specified base amount of that section. Thus, to use an extreme example, if the debtors here had received farm income of $30,000, nonfarm income of $15,000, and social security benefits of $60,000, they would have had gross taxable income of $66,500, rendering them ineligible under the 50 percent test of § 101(18) for relief as family farmers.[5] Surely the debtors' proportionately smaller income does not make them any more family farmers than in this example. The family farmer test of § 101(18) is a percentage test and should not be affected by the relative size of a debtor's income. Thus, the special tax provision of § 86 is inappropriate to determine gross income here, as it is inconsistent with the evident objective of § 101(18).

The Court finds that the debtors' social security disability income of $20,440 should be included as part of their total gross income for 1990 in determining their quali-

fication as family farmers under § 101(18). This ruling reflects the pragmatic approach of the Seventh Circuit's *Armstrong* decision and avoids the sort of "illogical, undesired, and unnecessary results" eschewed by that court in defining who may be a farmer. *Armstrong*, 812 F.2d at 1027. While this outcome is seemingly contrary to *Wagner*, the Court notes that neither *Wagner* nor subsequent decisions applying a strict tax code approach were concerned with fact situations in which actual income was excluded from consideration as gross income as a result of tax policy rendering it free from taxation.[6] *Cf. In re Bergmann:* proceeds from grain produced in 1986 but sold in 1987 could not be counted as farm income in 1986; *In re Nelson:* damages settlement received in 1985 but not shown on debtors' tax return that year could not be included as gross farm income for 1985. Based on this Court's ruling, the debtors would fail to meet the 50 percent threshold requirement for Chapter 12 relief.

■ The debtors make a further argument that the debt forgiveness realized by them in 1990 constitutes gross income for purposes of § 101(18) and that this income is properly classified as farm income because the indebtedness arose out of their farming operations. The Bank accepts the debtors' characterization of the debt forgiveness as income, but asserts that the debt forgiveness, like the cash rental arrangement in *Armstrong*, exposed the debtors to none of the risks associated with farming and constitutes nonfarm income. If the debtors are correct that the $30,513 amount of debt forgiveness constitutes farm income, they would qualify under the 50 percent test of § 101(18) notwithstanding the Court's ruling that social security

---

5. Under this example (arrived at by tripling the amounts at issue in this case), the sum of the debtors' modified adjusted gross income ($45,000) and one-half of the social security benefits ($30,000) would be $75,000, which would exceed the base amount of $32,000 by $43,000. The amount of social security benefits included in gross income would be one-half of this excess or $21,500, making the debtors' total gross income $66,500.

6. The social security income at issue here is analogous to the municipal bond income referred to in *Wagner*. That court "acknowledged the force" of the argument that the tax code definition of gross income was inappropriate to such income but was not required to rule on its status as gross income under the facts of that case. *See Wagner*, 808 F.2d at 546, 548.

income is includable as gross income.[7]

The Court disagrees with the parties' assumption that the debt forgiveness realized by the debtors shortly before filing bankruptcy constitutes gross income to be considered in the family farmer test of § 101(18). While "income from discharge of indebtedness" is one of the enumerated items of income contained in the tax code definition of gross income (*see* 26 U.S.C. § 61(a)(12)), debt forgiveness income is excluded from gross income if the discharge occurred in a bankruptcy proceeding or when the taxpayer was insolvent. *See* 26 U.S.C. § 108(a)(1). In such a case, the amount of debt forgiveness is instead applied to reduce "tax attributes" of the taxpayer such as net operating losses incurred in the year of discharge or carried over from prior years. *See* 26 U.S.C. § 108(b); *see generally United States v. Centennial Savings Bank FSB,* —— U.S. ——, 111 S.Ct. 1512, 113 L.Ed.2d 608 (1991).[8]

The debt forgiveness here occurred in November 1990, four months prior to the debtors' bankruptcy filing. While it is unclear whether the debtors were in fact "insolvent" at that time as having an "excess of liabilities over the fair market value of assets" (*see* 26 U.S.C. § 108(d)(3)), the pro forma tax return submitted by the debtors indicates that the amount of debt forgiven was indeed applied to reduce the debtors' net operating loss carryforward as provided in § 108(b). *See* 26 U.S.C. § 108(b)(2)(A). Debt forgiveness income

qualifying for such treatment under § 108 is, by definition, excluded from gross income under the tax code. Thus, the debtors' own treatment of the debt forgiveness belies their argument that it constitutes gross income under a tax code definition of that term.

The Court finds that the $30,513 in debt forgiveness realized in November 1990 should not be counted as gross income in determining the debtors' eligibility as family farmers. Unlike the social security or municipal bond income discussed above, which is actual income though exempt from taxation, debt forgiveness is an accounting entry which affects only the liability side of a debtor's balance sheet and creates no new funds. The debt forgiveness here merely improved the debtors' balance sheet by reducing the extent of their indebtedness, and it cannot be characterized as income under either a tax code or common sense approach. *Cf. In re Rott,* 73 B.R. 366 (Bankr.N.Dak.1987): debt forgiveness, even if income for tax purposes, does not constitute gross income under § 101(18) because no cash was received; *but cf. In re Vernon,* 101 B.R. 87 (Bankr.E.D.Mo.1989): forgiveness of commodities loan treated as income from sale of crop and declared as income in year of default constituted farm income under § 101(18). The Court, accordingly, rejects the debtors' contention that this debt forgiveness brings them within the 50 percent threshold of § 101(18).

---

7. Under the debtors' argument, they would have $40,977 in farm income ($30,513 debt forgiveness and $10,464 other farm income) and total gross income of $67,189 (using the actual figures shown on their pro form a tax return—see footnote 3).

8. Section 108 provides in relevant part:
  (a) *Exclusion from gross income.*
    (1) *In general.* Gross income does not include any amount which (but for this subsection) would be includible in gross income by reason of the discharge (in whole or in part) of indebtedness of the taxpayer if—
    (A) the discharge occurs in a title 11 case, [or]
    (B) the discharge occurs when the taxpayer is insolvent[.]

  (b) *Reduction of tax attributes.*

*In general.* The amount excluded from gross income under subparagraph (A) [or] (B) subsection (a)(1) shall be applied to reduce the tax attributes of the taxpayer as provided in paragraph (2).
  (2) *Tax attributes affected; order of reduction.* [T]he reduction referred to in paragraph (1) shall be made in the following tax attributes in the following order:
  (A) NOL. Any net operating loss for the taxable year of the discharge, and any net operating loss carryover to such taxable year.
11 U.S.C. § 108.

For the reasons stated, the Bank's motion to dismiss should be granted.