**In re Ronald E. FONKE, Debtor.**

**No. 03–41389–H1–13.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

June 17, 2004.

---

**6.** 29 U.S.C. § 1341(a)(1).

**7.** *Id.*

810

Peter Johnson, Houston, TX, for Ronald E. Fonke.

Johnie Patterson, Walker & Patterson, P.C., Houston, TX, for AAR.

## MEMORANDUM OPINION

MARVIN ISGUR, Bankruptcy Judge.

**Background**

On August 7, 2003 (the "Petition Date"), Ronald Edward Fonke (the "Debtor") filed his chapter 13 case. At that time, there was a pending state court lawsuit styled *AAR Incorporated v. Ronald Fonke,* case no. 2001–52828, pending in Harris County District Court (the "State Court Litigation"). All discovery in the State Court Litigation was complete and the case was ready to proceed to trial. The lawsuit involved a contract between AAR Incorporated ("AAR") and Third Coast Services, Inc. ("Third Coast") relating to the payment for services on a construction project performed by Third Coast. The lawsuit was filed against Third Coast and the Debtor, who was an officer of Third Coast. Third Coast is no longer operating and has no remaining assets. Consequently, AAR was pursuing the Debtor for recovery of damages. AAR's allegations against the Debtor in the State Court Litigation included fraud, breach of fiduciary duty, negligent misrepresentation, and negligent accounting.

The Debtor's chapter 13 case was dismissed on September 9, 2003 for failure to pay the filing fee (it appears this was a clerical error) and the Debtor's case was reinstated on October 9, 2003. Debtor appeared at his § 341 on November 17,

2003. On December 14, 2003, AAR filed its Motion to Convert Chapter 13 to Chapter 7 (the "Motion to Convert"), alleging that the Debtor's Chapter 13 case was filed in bad faith and therefore should be converted to a chapter 7 case. AAR alleged that conversion, as opposed to dismissal, was in the best interest of the estate and the creditors of the estate. AAR further alleged that based upon the Debtor's testimony at his § 341 meeting, (i) the Debtor's Schedules and Statement Of Financial Affairs were materially false and misleading and were designed to mislead his creditors, and (ii) the filing of his chapter 13 case was an attempt to protect and safeguard multiple alleged pre-petition transfers of significant assets which should be pursued by a chapter 7 trustee for the benefit of the creditors of this estate.

In response to AAR's Motion to Convert, the Debtor claimed in part that conversion of his case to chapter 7 was prohibited by § 1307(e) because the Debtor was a farmer; and that AAR's allegations of improper transfers were without merit. On February 19, 2004, this Court began a trial on AAR's Motion to Dismiss which was continued to February 23, 2004. At the conclusion of the February 23, 2004 hearing, the remainder of the trial was continued pending the outcome of the parties' settlement discussions. An agreement was reached by the parties; this Court rejected the terms of the parties' proposed agreement because it impermissibly interfered with the prerogatives of a to-be-named chapter 7 trustee. After this Court rejected the parties' proposed agreement and reset the continued trial on AAR's Motion to Convert, the Debtor filed his Motion to Dismiss Case Pursuant to 11 U.S.C. § 1307(b) (the "Motion to Dismiss") alleging that—notwithstanding the ongoing trial on AAR's Motion to Convert, and the allegations of fraud and bad faith con-

tained therein—he was entitled to dismiss his chapter 13 case.

The findings of fact and conclusions of law which were made orally at the conclusion of the hearing on May 5, 2004 are supplemented by the following discussion.

**Discussion**

### A. 11 U.S.C. § 1307(b)—Absolute Right to Dismiss?

■ This Court continued the trial on AAR's Motion to Convert on May 5, 2004. On May 5, 2004, the Court considered the Debtor's arguments on whether he had the absolute right to dismiss his case. After reviewing the parties' briefs and hearing counsels' arguments, the Court concluded that a Debtor's conversion rights under § 1307(b) are not absolute.

The Debtor argues that he has an absolute right to dismiss his case under 11 U.S.C § 1307(b). Section 1307(b) provides that "[o]n request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable." The next subsection, however, states that:

> Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . .

While several courts have adopted the Debtor's view that a Chapter 13 debtor's right to dismiss under § 1307(b) is absolute, other courts have held that § 1307(c) restricts a debtor's right to voluntary dismissal. *See, e.g., In re Cobb*, 2000 WL 17840, 2000 U.S. Dist. LEXIS 198

(E.D.La.2000) (discussing the split in authority and those courts which have ruled on the issue). Those courts that have found § 1307(c) imposes a restriction on a debtor's ability to dismiss have interpreted §§ 1307(b) and (c), as well as the corresponding provisions of chapter 12, as restricting "the right to dismissal when there is a pending motion to convert[1] or there are allegations of fraud or bad faith." *Id.*, 2000 WL 17840 at *2, 2000 U.S. Dist. Lexis 198 at *5; *see also In re Molitor*, 76 F.3d 218 (8th Cir.1996) (finding that "[t]o allow [the debtor] to convert by voluntarily dismissing his case with impunity would render section 1307(c) a dead letter and open up the bankruptcy courts to a myriad of potential abuses."); *In re Goza*, 142 B.R. 766 (Bankr.S.D.Miss.1992) (finding that [w]hen the facts show that the debtors have abused the legal process and the bankruptcy process through fraud, the bankruptcy court has the authority to convert a chapter 12 proceeding to a chapter 7 liquidation, even though the debtors have filed a motion to dismiss the chapter 12 proceeding."); *In re Gaudet*, 61 B.R. 349, 350 (Bankr.D.R.I.1986) (finding "the debtor's general conduct and demonstrated lack of credibility, which we view as a blatant bad faith attempt to misuse the bankruptcy process, require denial of the motion to withdraw his Chapter 13 petition."); *In re Powers*, 48 B.R. 120 (Bankr. M.D.La.1985). As the Court in *In re Gaudet* reasoned:

> Reading subsections (b) and (c) in *pari materia* leads one to the conclusion that Congress could not have intended to give a debtor an absolute right to obtain dismissal of a Chapter 13 case. Such a right would give the debtor unfettered power to prevent conversion under § 1307(c) by simply filing a motion to

dismiss whenever conversion was requested. For all practical purposes, that would render subsection (c) a nullity, an intent that ought not to be attributed to Congress. Consequently, this Court holds that the conversion provision contained in § 1307(c) operates as a limitation on the debtor's right to obtain voluntary dismissal under § 1307(b).

*In re Gaudet*, 132 B.R. 670, 676 (D.R.I. 1991).

The concern of these courts is that an absolute right to dismiss in face of allegations of fraud and bad faith will encourage abuse of the bankruptcy systems by dishonest individuals who are misusing the system. *See, e.g., In re Molitor*, 76 F.3d at 220; *In re Powers*, 48 B.R. at 121. As acknowledged by the parties, however, the Fifth Circuit has yet to address this specific issue. *Cobb*, 2000 WL 17840 at *2, 2000 U.S. Dist. Lexis 198 at *4. The Northern District of Texas addressed a similar issue in the context of chapter 12. *In re Foster*, 121 B.R. 961 (N.D.Tex.1990), *aff'd without opinion*, 945 F.2d 400 (5th Cir.1991). The *Foster* court in interpreting § 1208(b), the language of which is identical to § 1307(b), found that because "the debtors abused the legal process and the bankruptcy process through fraud, the bankruptcy court had the authority to convert a chapter 12 proceeding to a chapter 7 liquidation, even though the debtors [had] filed a motion to dismiss the chapter 12 proceeding." The *Foster* court's decision was affirmed without opinion by the Fifth Circuit. While not controlling, the Fifth Circuit's affirmation of the *Foster* court's interpretation of § 1208(b), the language of which is identical to § 1307(b), is persuasive.

---

**1.** While not dispositive in its decision, the Court notes that AAR's Motion to Convert was not simply pending, but that a trial had already commenced on the Motion and had been continued in order to facilitate the parties' settlement negotiations.

■ The Court also believes that a reading of § 1307(b) in conjunction with § 1307(a) supports the proposition that a debtor does not have an absolute right to dismiss under § 1307(b). Section 1307(a) states that a "debtor may convert a case under this chapter to a case under chapter 7 of this title at any time. Any waiver of the right to convert under this subsection is unenforceable." In contrast to § 1307(b), § 1307(a) does not indicate that the debtor must first "request" conversion in order to convert his or her case. The fact that § 1307(b) is predicated with the requirement that the debtor "request" dismissal, whereas § 1307(a) does not, further supports the notion that § 1307(b) does not provide an absolute right to dismissal, since the debtor must first apply for such dismissal from the court. It is inherent that any filing made before this Court not be done in bad faith or in furtherance of a fraudulent or bad faith purpose. Inasmuch as the statute requires the Debtor to "request" dismissal, the Court imposes a duty on the Debtor that the Debtor's request not be made in bad faith.

As such, this Court agrees with those courts that have concluded that the right to dismissal is not absolute when there is a pending motion to convert or there are allegations of fraud or bad faith.

### B. *Farmer Status*

The Debtor also argues that his case can not be converted because he is a "farmer" for purposes of 11 U.S.C. § 1307(e). Section 1307(e) provides that "[t]he court may not convert a case under this chapter to a case under chapter 7, 11, or 12 of this title if the debtor is a farmer, unless the debtor requests such a conversion." "Farmer" is defined as a:

[P]erson that received more than 80 percent of such person's gross income during the taxable year of such person immediately preceding the taxable year of

such person during which the case under this title concerning such person was commenced from a farming operation owned or operated by such person.

11 U.S.C. § 101(20).

■ An individual's status as a farmer is an affirmative defense that may be waived. *In re McCloy*, 296 F.3d 370, 375 (5th Cir.2002). Therefore, the burden is on the debtor to establish that he qualifies as a farmer for purposes of § 1307(e). Pursuant to § 101(20), the taxable year this Court must look at to evaluate the Debtor's farmer status is 2002.

■ The term "gross income" is not defined in the Bankruptcy Code. *In re Way*, 120 B.R. 81, 82 (Bankr.S.D.Tex.1990) (citing *In Matter of Wagner*, 808 F.2d 542 (7th Cir.1986)). Since gross income is not defined by the Bankruptcy Code, this Court equates gross income under § 101(20) with the definition of gross income contained in § 61 of the Internal Revenue Code. *See, e.g., Way*, 120 B.R. at 82. Pursuant to § 61(a)(3) of the Internal Revenue Code, "gross income means all income from whatever source derived, including ... [g]ains derived from dealings in property." 26 U.S.C. § 61(a)(3). According to the Debtor's 2002 federal income tax return, as well as his testimony, the Debtor realized $38,000 in gain from the sale of a service station. This $38,000 is included in the Debtor's gross income for purposes of evaluating whether the Debtor qualifies as a farmer under § 101(20). *Id.; see also Tollis v. Commissioner*, 65 T.C.M. (CCH) 1951 (1993). This income does not qualify as income from a "farming operation". *See, e.g., In re Ross*, 270 B.R. 710 (Bankr.S.D.Ill.2001); *In re Van Fossan*, 82 B.R. 77 (Bankr. W.D.Ark.1987). The calculation produces

the following results [2]:

| | Total | Farm | Non–Farm |
|---|---|---|---|
| Interest | $ 1,645.00 | $ 0.00 | $ 1,645.00 |
| Rents | $ 9,000.00 | $ 0.00 | $ 9,000.00 |
| Capital gain | $38,000.00 | $ 0.00 | $38,000.00 |
| Gross farm income | $41,055.00 | $41,055.00 | 0 |
| TOTAL | $89,700.00 | $41,055.00 | $48,645.00 |
| Percentage | 100.00% | 45.77% | 54.23% |

The Debtor has suggested that such a technical application of "gross income" may be unfair. Although the Court does not believe that it can or should vary the plain language of the statute (*See United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)), the Court has also considered a non-technical application of the statute. In doing so, the Court has considered *all* of the Debtor's income and all income from community [3] sources. The Debtor's 2002 tax return reflects the following income (the spouse's income is again excluded):

| | Total | Farm | Non–Farm |
|---|---|---|---|
| Interest | $ 1,645.00 | $ 0.00 | $ 1,645.00 |
| Rents | $9,0000.00 | $ 0.00 | $ 9,000.00 |
| Gross farm income | $41,055.00 | $41,055.00 | 0 |
| TOTAL | $51,700.00 | $41,055.00 | $10,645.00 |
| Percentage | 100.00% | 79.41% | 20.59% |

Accordingly, if the Debtor's 2002 tax return is accepted at face value and the capital gains income is excluded, the Debtor is not a farmer as that term is used in the Bankruptcy Code. The Court recognizes that 0.59% (in this case $305.00) is a small amount of money. However, Congress has adopted a bright line rule; even if this Court were willing to exclude the capital gains, it cannot vary the bright line created by Congress. The Debtor is not a farmer.

## C. *Lack of Good Faith*

Since this Court found that the Debtor's right to dismiss pursuant to § 1307(b) is not absolute—and further decided that the Debtor is not a farmer for purposes of § 1307(e)—the last issue before the Court is whether the Debtor's case was filed in "bad faith" and therefore should be converted.

Under § 1307, upon the request of a party in interest, the court may convert a chapter 13 case to chapter 7 "for cause". Section 1307 delineates a non-exclusive list of 8 circumstances which constitute cause. Lack of good faith constitutes "cause" for purposes of § 1307(c). *See, e.g., Toles v. Powers*, 1999 WL 1261453 (N.D.Tex.1999). To determine

---

**2.** The Court has excluded the Debtor's spouse's income from wages. Inclusion of such amounts (i) is not appropriate inasmuch as the spouse is not a Debtor; and (ii) in any event, would adversely affect the Debtor's claim of farmer status.

**3.** The Debtor has requested that the Court only consider one-half of the income from community sources. There is no logical basis for such a split of the community income. If the Court were to apply a non-technical definition, it would apply one that conforms with § 541 of the Code. *See* 11 U.S.C. § 541(a)(2) and § 541(a)(6).

whether a Debtor acted in good faith, courts employ a "totality of the circumstances" analysis with the determination made on a case-by-case basis. *Id.; see also In re Chaffin*, 836 F.2d 215 (5th Cir. 1988); *In re Love*, 957 F.2d 1350 (7th Cir.1992); *In re Nassar*, 216 B.R. 606 (Bankr.S.D.Tex.1998); *In re Aichler*, 182 B.R. 19 (Bankr.S.D.Tex.1995).

█ Employing the "totality of circumstances" test, and as announced at the May 5th hearing, this Court finds that the Debtor lacked good faith in filing his bankruptcy petition, and therefore, cause exists to convert his case to a case under chapter 7 of the Bankruptcy Code. The Court did not find the Debtor to be a credible witness. His testimony was largely inconsistent in nature and often contradicted both his earlier testimony as well as the testimony of his wife. The Debtor displayed little regard for the truth. Among other things, the Debtor provided evasive and contradictory testimony about the sale of real property in Matagorda County to his stepson and how and to whom the money from the sale was paid[4]; conflicting testimony concerning his knowledge of and the ownership of certain bank accounts[5], and

the details surrounding the creation and ownership of LT Cattle Company.[6]

The Debtor's testimony about why he filed his Motion to Dismiss was also telling. The Debtor claimed that things were now "out of hand", that he realized that the dispute with AAR would eventually need to be fought in state court, and most notably that "*he did not need the bankruptcy*" and that he could "afford to pay his debts". He further testified that he had filed the bankruptcy because he couldn't afford to fight the State Court Litigation anymore, yet he now wanted to dismiss his case and go back to state court because he now realized that bankruptcy was not going to "solve" the State Court Litigation and there was going to be no "cheap" way to take care of the "problem". He stated that he could afford to fight the State Court Litigation now because he could easily make more money if he desired. This and other testimony leads the Court to conclude that the Debtor's bankruptcy was motivated solely by the two-party dispute with AAR, and was essentially an attempt to thwart AAR in the State Court Litigation and to engage in forum shopping in the hopes of discouraging AAR. It wasn't until the Debtor realized that bankruptcy

---

**4.** Debtor originally claimed that he could not recall if or how his stepson paid the $42,000 for the property. Later he claimed the payment was probably made to his wife and that she would have deposited it into her separate account. Not only does this suggest the commingling of joint community/sole management property and that much of the property that the Debtor deemed to be his wife's "separate" property was in fact not, but the Debtor's wife testified that the money was paid to the Debtor himself. Until the Court expressed its incredulity, the Debtor even claimed that he could not recall if the $42,000 was paid in currency.

**5.** The Debtor at one point claimed that he had no knowledge of his wife's bank accounts— i.e. how many existed, where they were located, etc. However, when it served his benefit,

the Debtor's subsequent testimony distinguished "his" bank accounts from "hers" by memory of the account numbers alone.

**6.** The Debtor first testified that he had transferred or "gifted" some cattle to LT Cattle Company for the benefit of his grandchildren, but his wife later testified that she set up the company, including the purchase of at least 8 to 14 cattle, with a small Christmas bonus of approximately $1,000. While the true nature of LT Cattle Company is still a mystery, it does seem apparent that the Debtor's wife could not have established LT Cattle Company on her Christmas bonus alone. The Court also notes that the Debtor and his wife acknowledged that there was nothing in writing regarding LT Cattle Company and the ownership of the cattle encompassed by it.

was not going to be an easy way out of the dispute with AAR that he decided that he wanted to dismiss his case. Meanwhile, the Court's resources, as well as those of AAR's, had already been greatly expended in the administration of the Debtor's case. Courts have found a chapter 13 to be in bad faith where the Debtor's reorganization essentially involves the resolution of a two-party dispute. *See, e.g., In re Plagakis,* 2004 WL 203090, 2004 U.S. Dist. LEXIS 2458 (E.D.N.Y.2004); *In re Virden,* 279 B.R. 401 (Bankr.Mass.2002); *In re Petersen,* 228 B.R. 19 (Bankr.M.D.Fla.1998).

This, however, is not the only indicia of the Debtor's bad faith in filing his petition. The Debtor failed to disclose all of his assets on his schedules, including certain leases, "memberships", farming equipment, livestock, as well as property that he himself judged to be his wife's separate property. While the Debtor later acknowledged most of these omissions, he in large part excused his failure to disclose certain items because he either "forgot" about them or he did not deem them to be "assets". Debtors, however, "have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or are unavailable to the bankruptcy estate." *In re Yonikus,* 974 F.2d 901, 904 (7th Cir.1992). Here the Debtor took it upon himself to decide what he considered to be an asset, and even after he was alerted as early as his § 341 meeting that these omissions needed to be listed on his schedules, the Debtor made no effort to amend his schedules. The numerous omissions, and the Debtor's failure to correct these omissions, also support this Court's finding that the Debtor lacked good faith. *See, e.g., In re Leavitt,* 171 F.3d 1219 (9th Cir.1999) (finding debtor's failure to fully disclose assets and correct omissions indication of bad faith).

The Court finally notes the strong circumstantial evidence presented that indicates numerous potentially preferential and fraudulent transfers that occurred prior the Debtor's filing for bankruptcy relief, many of which were also not disclosed on the Debtor's schedules.[7] This includes "informal arrangements" in which the Debtor transferred cattle and other property to friends and family, the alleged transfer of cattle to LT Cattle Company, as well as the unaccounted for fluctuation in the number of livestock under the Debtor's control[8]. As the Court announced at the May 5th hearing, the evidence strongly indicates that pre-petition the Debtor went to any lengths to hide assets with the goal of treating his creditors, namely AAR, unfairly. Furthermore, the evidence also suggests the vast dissipation of the Debtor's assets. During the testimony, the Debtor claimed to have baled approximately 5,000 round bales of hay, and that he could get approximately $30 for each round bale. Put simply, the Debtor could not begin to explain the loss of the

---

7. The evidence presented during the hearing indicates that prior to filing bankruptcy, the Debtor sold a large portion of his homestead and used the proceeds to pay off approximately 24 creditors which amounted to the payment of all of the Debtor's creditors excluding AAR. While AAR argued this was an example of the Debtor's bad faith, this Court does not find that the Debtor's sale of exempt property and use of those exempt funds is an indication of bad faith. The Court notes, however, that this did result in AAR becoming the Debtor's only "true" creditor, further supporting the two-party dispute finding made earlier by this Court.

8. This includes the apparent inaccurate listing of the number of cattle that belong to the Debtor, and the Debtor's claim that he does not know how many cattle were in his possession at the commencement of the case, nor how many have been sold since the commencement of the case.

$150,000 in hay. The Debtor, however, subsequently testified that the majority of the hay baled was not sold, but was in fact used to feed cattle on his property that did not belong to him—i.e. cattle that he transferred to others or that belonged to others (including his children and grandchildren), and also acknowledged that aside from feeding this cattle, he vaccinated the cattle, and essentially cared for the cattle all without charge.

Therefore, given the "totality of the circumstances", this Court finds that there has been an abuse of the provisions, purposes, and spirit of chapter 13 by the Debtor and that cause exists to convert the Debtor's case. *Aichler*, 182 B.R. at 21–22. Even though this Court has found that cause exists to convert the Debtor's case, this does not end the inquiry—the Court also finds that it would be in the best interests of the creditors and the estate to convert. Given the allegations and evidence of numerous potential preferential and fraudulent transfers, the dissipation of estate assets, as well as the Debtor's obvious lack of candor with this Court, the Court finds that creditors and estate will be best served by the conversion of the case to chapter 7 and the appointment of a chapter 7 trustee.

## Conclusion

Based on the Court's oral findings and the foregoing discussion, this Court concludes that cause exists, and that it is in the best interests of creditors and the estate, to convert the Debtor's case to a case under chapter 7 of the Bankruptcy Code. A separate order converting the case has been entered.